Henry W. Lengyel, J.
This is a duly filed claim for false arrest and imprisonment.
On August 15, 1964, State Trooper Bouchard was on highway patrol in the Town of Bombay, Franklin County, New York. He observed a motor vehicle being operated on the wrong side of the center line of Route 37. After stopping said vehicle, he asked the driver for her name and her driver’s license. She advised the trooper that her name was “ Margaret White ” and that she could not produce her license which had been left at home on the St. Regis Indian Reservation. As the operator of the vehicle was a local resident, Trooper Bouchard advised her that he would follow her to her home so that she might obtain her license. The St. Regis Reservation in the United States is located adjacent to the Canadian border. When the driver of said motor vehicle reached a point near the border, she accelerated her vehicle and drove across the border where Trooper Bouchard could not follow. On August 19, 1964, Trooper Bouchard executed two informations against Margaret White. Warrants were issued against her by Justice of the Peace Richards for failure to keep right and for being an unlicensed operator.
On September 3, 1964, State Troopers Reardon and Huckle were on road patrol. They received a radio call from the State Police substation at Canton, New York, advising them that Margaret White was at “ Tootie’s Bar ”, Massena, New York. They were not given any description of Margaret White. They *350 obtained the aforesaid warrants and proceeded to “ Too tie’s Bar ”, When they entered the premises, Trooper Reardon, who retained one warrant, stationed himself at the entrance door and Trooper Huckle, who had the other warrant, walked up to the bar. There were between 20 and 25 persons at the bar. Trooper Huckle spoke with the bartender but the gist of that conversation was not presented at the trial. He then proceeded to the claimant who was standing at the bar and asked her if she was Margaret White. She told him that her maiden name was Margaret White but that she was married and she went under her married name, Margaret Maraele. He displayed the warrant to her and explained it was a warrant for her arrest. He advised her that she was under arrest and would have to go with him. Mrs. Maraele did not inquire as to the contents of the warrant. Apparently the only other conversation at the bar was an inquiry by Mrs. Maraele as to whether she could finish her beer and a reply by Trooper Huckle that she could not but, if the bartender would save it, she would be back in time to finish it. Mrs. Maraele did not physically resist the arrest.
After leaving the bar the two State troopers and the claimant drove to Justice of the Peace Richards’ home, a distance of 7 or 8 miles, Mrs. Maraele was in the back seat with Trooper Reardon. During this trip Mrs. Maraele asked why she was being arrested. Trooper Reardon showed her his warrant and explained the charges to her. At least two or three times on this trip she told the State troopers she was not the Margaret White named in the warrants and that they had arrested the wrong person, Trooper Reardon asked her for her driver’s license but she did not have one with her.
At the Richards’ home, Mrs. Maraele again told the State troopers and the Justice of the Peace that she was not the person named in the warrant. Justice of the Peace Richards arraigned the claimant, advised her of her right to counsel, and set bail of $30. He permitted her to make one phone, call but she could not obtain bail money. After a delay of one or two hours to obtain a commitment form, the Justice of the Peace issued a commitment order and claimant was taken to the Franklin County jail. She was admitted to jail at about 3 ;00 a.m. on September 4, She remained in jail until about 9:00 p.m. on September 6 when she was released on bail. While in jail, she was interrogated twice by the B. C. I. relative to other crimes.
On September 11 the claimant and her attorney appeared before Justice of the Peace Richards for disposition of the *351 charges laid against the claimant.. State Trooper Bouchard was. also present. He advised the Justice of the Peace that claimant was not the person against whom the warrants had been issued. The Justice of the Peace, upon motion of claimant’s counsel, dismissed the charges against Margaret Maracle. Claimant was charged $50 by her attorney for his services.
To make the story complete we should note that Mary Ann Cook was arrested a month or two later for the violations set forth above. She admitted giving a false name to State Trooper Bouchard. She was found guilty and was ■ fined. A rather lenient disposition of charges when one considers the Pandora’s box of troubles opened up by the Cook woman’s misguided and vicious sense of humor.
The State agreed that the wrong woman had been arrested. However, the Assistant Attorney-General contended, under the authority of Nastasi v. State of New York (275 App. Div. 524, affd. without opn. 300 N. Y. 473) and Larson v. State of New York (Claim No. 39601, unreported) that the claim must be dismissed. In the Nastasi decision, the Appellate Division stated (p. 526): “The arresting officers * * * were under a duty to comply with this declaration and warrant * * *. They were not obliged to institute an inquiry in order to satisfy themselves that no error had been committed. They were confronted with what appeared to be a valid directive for the arrest and incarceration of the claimant, and in yielding obedience to it they did not subject themselves or the State to an action for false arrest or imprisonment.” Unquestionably this is the law of New York. However, it does not apply to the case before this court. In Nastasi, and in many cases which have turned on the Nastasi doctrine, the arresting officers arrested the person whom they were directed to arrest. In this case, the arresting officers arrested a person other than the person they were directed to arrest. Admittedly, when they made an arrest they could not have done otherwise, as the warrant was against a named person who did not exist in relation to the crime charged. These officers were unwittingly and unknowingly faced with a Hobson’s choice. However, that fact standing alone does not relieve the State from possible liability for false arrest and imprisonment, unless it can prove that the arrested person entered into a conspiracy to cause the arrest. This the State did not prove.
An arresting officer, acting in good faith, must either have probable cause to assume that he is arresting the person named in the warrant; or, he must exercise reasonable diligence to satisfy himself that he has placed the proper person under *352 arrest. (Schneider v. Kessler, 97 F. 2d 542, 544; Darlow v. State of New York, 207 Misc. 124; 22 N. Y. Jur., False Imprisonment, § 19; Restatement, Torts 2d, § 125, p. 222; 22 Am. Jur., False Imprisonment, § 73, p. 405; Ann. 127 A. L. R. 1057, 1058; Ann. 10 ALR 2d 752.)
The fact that the claimant accompanied the officers peaceably and did not resist the arrest does not remove the necessity for probable canse or reasonable diligence to develop probable canse; nor, does it indicate consent to the false arrest and imprisonment. (See McLoughlin v. New York Edison Co., 252 N. Y. 202, 205; Barbarelli v. State of New York, Claim No. 41113, anreported.)
The arresting officers were placed on notice that they very possibly were arresting the wrong person. The name “ Margaret White ” is not an ancommon name in this area. The ancontroverted proof was that there were several persons with the name of “ Margaret White ” living on the St. Regis Indian Reservation. When the claimant advised the first State Trooper that she went ander her married name, Margaret Maracle, a danger signal was raised. Daring the trip to the Jastice of the Peace, when the claimant denied two or three times being the Margaret White named in the warrants, another danger signal was raised. When the claimant denied before the Jastice of the Peace that she was the Margaret White named in the two warrants, a third danger signal was raised. Despite a sitaation replete with caveat actor, the arresting officers proceeded with mechanical precision apon their chosen coarse. They made absolately no effort to ascertain the propriety of this arrest, except to ask claimant for her driver’s license which she did not have with her. They made no effort to obtain a description of the Margaret White named in the warrants, either from State trooper headqaarters or from .State Trooper Boachard.
We fally realize the many difficnlt sitaations which face the State Police in the discharge of their responsibility to protect the lives, liberties, and property of the residents of this State. There is no qaestion bat that they discharge this responsibility on a par with the finest of police organizations. However, when we consider the danger signals raised and the minor natare of the charges set forth in the warrants, we find it impossible to nnderstand the apparent casaal attitade of these State troopers. As was stated in Grinnell v. Weston (95 App. Div. 454, 468): “A want of pradence, when the failare to exercise pradence may be of sach grave conseqaences to the party arrested, characterizes the act as committed in atter disregard of the rights of the party affected.”
*353 What has happened here points np the ageless wisdom of Justice Holmes in his dissent to Olmsteacl v. United States (277 U. S. 438, 470): “ We have to choose, and for my part I think it a less evil that some criminals should escape than that the Government should play an ignoble part.”
The arresting officers did not have probable cause to believe they were arresting the proper person. They did not exercise reasonable or due diligence to ascertain whether or not they were arresting the proper person. The State is liable for the false arrest and the imprisonment which flowed from such illegal arrest.
The State took the position that, even if there was a false arrest, it was insulated from the actual confinement by the commitment order which was signed by the Justice of the Peace. We assume that the State’s position is predicated upon cases such as Warner v. State of New York (297 N. Y. 395); Caminito v. City of New York (45 Misc 2d 241). This position was succinctly stated in IlougMaling v. State of New York (11 Misc 2d 1049, 1056): “Imprisonment which is authorized by process which is regular on its face and is issued by a court having acquired jurisdiction is lawful and cannot give rise to a cause of action for false imprisonment even though the process was erroneously or improvidently issued.” (Italics added.) Williams v. State of New York (16 Misc 2d 109, affd. 9 A D 2d 415, affd. 8 27 Y 2d 886) in discussing the theory behind the above case law established that the critical question to be determined is whether or not the committing court had jurisdiction of the person committed. We find that the committing court herein did not have jurisdiction over the claimant. A court does not obtain jurisdiction over a defendant without some color of reason for that person’s presence before the court. (See Cooter v. Bronson, 67 Barb. 444; Mandeville v. Guernsey, 51 Barb. 99,102, affd. 50 N. Y. 669.)
The facts presented do not warrant a recovery for exemplary or punitive damages. (Darlow v. State of New York, 207 Misc. 124, 127, supra, Cope v. John Wanamaker of New York, 249 App. Div. 747, affd. 274 N. Y. 622.) Claimant is entitled to compensatory damages for shame, mental suffering, and loss of freedom and for legal fees incurred in her defense on the criminal charges.
Claimant is awarded the sum of $1,550 for all damages.
We reserved decision on the State’s motions to dismiss. We now deny both of said motions.