**Henry FRANCOIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 81 Civ. 1645 JRB.**

United States District Court, E. D. New York.

Dec. 14, 1981.

**534**

Saul Grover Wlodaver, New York City, for plaintiff.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for defendant; Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y., of counsel.

BARTELS, District Judge.

This is an action brought by Henry Francois pursuant to the Federal Tort Claims Act (FTCA) for personal injuries and medical expenses arising out of his false arrest and detention on September 24, 1980. After three days of trial the Court makes the following findings.

### FACTS

On October 23, 1979 Jamaican authorities requested the extradition, pursuant to a treaty, of one Winston Hawthorne Edman, a Jamaican fugitive believed to have entered the United States in 1977, charged with fraudulent conversion of funds and obtaining sums of money by false pretenses in violation of Sections 24 and 25 of the Larceny Act of Jamaica. On May 21, 1980 a complaint requesting the extradition of Edman was authorized by United States Magistrate A. Simon Chrein, and thereafter, a warrant was issued to the United States Marshals for his arrest.

According to the documents Jamaican law enforcement officials supplied the marshals, Edman was a 36-year old, light skinned Negro Jamaican, an ex-policeman, 5'10", 200 pounds, with front dentures. Said authorities also sent the marshals a photo of Edman, showing a light-skinned black man. In subsequent telephone conversations with Jamaican authorities, United States Deputy Marshal Mary Balderacchi additionally determined that Edman had gold teeth and was a gambler who frequented Church and Utica Avenues in Brooklyn.

On September 24, 1980, at about 1:30 p. m. three deputy marshals, Mary Balderacchi, Michael Hollander and Willie Williams, with copies of Edman's photo and his description in their possession, entered the OTB parlor at the corner of Utica and Church Avenues to check whether the OTB employees had seen the fugitive.

Upon entry, all three saw Henry Francois who is also a light-skinned black about 200 pounds, 5'10", 43 years old, having several gold teeth which they later noticed. The marshals, believing Francois fit the description of Edman, followed him outside and upon questioning learned that he was a Trinidad police officer but had no identification with him. They then decided Francois was Edman, arrested him, handcuffed him and placed him in their automobile.

Francois continually insisted that he was not Edman and after he was placed in the car, stated that his Trinidadian passport, located at his sister's house a few blocks away, would clear him. Thereupon the marshals drove him to his sister's house for the purpose of obtaining further identification. While Balderacchi and Francois remained in the car, Hollander and Williams went to the front of the house and showed the picture of Edman to Francois' mother who exclaimed, "My God, this is my son." They then entered the house and showed the photo to Francois' stepfather, who also identified the photo of Edman as his stepson. At that point the mother gave Marshal Hollander Francois' passport, indicating that he had entered the United States from Trinidad in 1980. However, predicated upon their experience with fraudulent passports, the marshals were unwilling to release Francois at that time and accordingly proceeded to drive him to the United States Marshals' Detention Facility in the United States Courthouse in Brooklyn.

Thereafter the marshals made strenuous efforts to verify Francois' identity, telephoning both Jamaican and Trinidadian authorities. In addition, they had Francois talk on the telephone with Jamaican Police Superintendent Hansen, who was uncertain whether Francois' voice was Edman's, but who provided the names of Jamaican police officers who happened to be in New York and who could identify Edman. One of these officers was brought to the marshals' office, and only after talking to Francois and seeing his gold teeth, was he able to announce that Francois was not Edman. Thereupon, Francois was promptly released. He had been falsely arrested and imprisoned from about 1:30 p. m. to 5:30 p. m., a total of four hours. Following his release Francois instituted this action.

## LAW

The risk of misidentification based on coincidental circumstances is unquestionably substantial and presents a difficult balance between the necessity of apprehending the guilty and the necessity of protecting from incarceration the innocent. It is well recognized that an action for tort under the FTCA is predicated on the law of the place where the tort was committed. 28 U.S.C. § 1346(b); *Hess v. United States,* 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960). In this case the false arrest was committed in the state of New York. Under that law it is clear that "[w]henever a person unlawfully obstructs or deprives another of his freedom to choose his own location, that person will be liable for that interference (Restatement, 2d, Torts § 35, comment H)." *Boose v. City of Rochester,* 421 N.Y.S.2d 740, 745, 71 A.D.2d 59, 64 (4th Dept. 1979). But an arrest made pursuant to a valid warrant issued by a court with jurisdiction exempts the arresting officer from liability. *Broughton v. State,* 37 N.Y.2d 451, 373 N.Y. S.2d 87, 335 N.E.2d 310 (1975). To insulate himself from liability for false arrest, however, the arresting officer must exercise reasonable care in ascertaining the identity of the person arrested. Where there are two persons to whom the description in the warrant applies with accuracy, the officer is privileged to arrest the person whom he reasonably believes is the person intended in the warrant only after using diligence to verify the arrestee's identity. *Boose,* 421 N.Y.S.2d at 747; *Williams v. City of Buffalo,* 422 N.Y.S.2d 241, 72 A.D.2d 952 (4th Dept. 1979); *Maracle v. State of New York,* 50 Misc.2d 348, 270 N.Y.S.2d 439 (Ct.Cl. 1966). Thus the New York test is an objective one, *i.e.,* whether there was good reason to believe Francois was Edman.

The plaintiff has suggested that his false arrest violated his constitutional rights and therefore the two-prong test of

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), applies. In *Bivens* on remand the Second Circuit Court of Appeals remarked:

> The standard governing police conduct is composed of two elements, the first is subjective and the second is objective. Thus the officer must allege and prove not only that he believed, in good faith, that his conduct was lawful, but also that his belief was reasonable.

456 F.2d 1339, 1348 (2d Cir. 1972). A false arrest due to mistaken identity pursuant to a valid warrant does not give rise to a constitutional violation. As stated by Justice Rehnquist in *Baker v. McCollan*, 443 U.S. 137, 143, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979), "Whatever claims this situation might give rise to under state tort law, we think it gives rise to no claim under the United States Constitution." Moreover, *Bivens* is not applicable for other reasons,[1] including specifically the provision of the FTCA, 28 U.S.C. § 1346(b), to the effect that in tort actions against the United States liability must be determined "in accordance with the law of the place where the act or omission occurred."

■ The Court finds that Marshals Balderacchi, Hollander and Williams acted with due diligence and reasonable care when they mistakenly arrested Henry Francois. Both Edman and Francois were light-skinned blacks, police officers from Jamaica and Trinidad respectively, of approximately the same height and weight and frequenting the same location in Brooklyn. In addition, the photo of Edman strongly resembled Francois and was pointed out by his own mother and stepfather as the picture of their son. Some question might be raised as to why the marshals did not release Francois upon receipt of his passport. The Court believes that under the circumstances the marshals acted reasonably and diligently in first taking Francois to their detention center and then promptly con-

tacting foreign authorities to verify Francois' true identity. Applying the above principles, we are satisfied that the marshals reasonably believed that Francois was Edman, and they exercised due diligence in obtaining his release.

The foregoing constitutes the Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. Accordingly, judgment must be entered for the defendant.

SO ORDERED.

---

1. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), involved a violation of the Fourth Amendment by a war-

rantless search and seizure. Francois' claim here involves a false arrest made pursuant to a valid warrant.