Manuela RODRIGUEZ, et al., Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. No. 92–2228 (GG).

United States District Court, D. Puerto Rico.

Dec. 17, 1993.

Juan Rafael Gonzalez Muñoz, Hato Rey, PR, for plaintiffs.

Guillermo Gil, U.S. Atty., María Hortensia Ríos Gándara, Asst. U.S. Atty., Hato Rey, PR, for defendant.

## OPINION AND ORDER

GIERBOLINI, Chief Judge.

This action was filed on September 2, 1992, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Plaintiffs allege that the U.S. Marshals illegally arrested plaintiff Manuela Rodríguez ("Rodríguez"), failed to bring her before the Magistrate without undue delay, knowing or having serious doubts that she was in reality the fugitive for whom the warrant was issued, and acted tortiously by arresting Rodríguez despite differences in the physical features described in the warrant. On November 25, 1992, the government answered the complaint admitting that the deputies had executed an arrest warrant for Manuela Rodríguez on February 8, 1990, but denying any wrongdoing. On April 29, 1992, defendant filed a motion for summary judgment averring that the arrest was reasonable and performed in good faith, and consequently, the government was entitled to summary judgment as a matter of law.

Pending before this Court is the aforementioned motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Plaintiffs filed a timely opposition. After careful consideration of the record, we grant defendant's motion for summary judgment, and dismiss the complaint.

## I. BACKGROUND

On February 8, 1990, two Deputy U.S. Marshals, Eugenio Díaz and César Pérez, arrested Rodríguez at her residence in Bayamón, Puerto Rico. The arrest warrant executed by the deputies was issued in New York on April 15, 1975, after a woman by the name of Manuela Rodríguez a/k/a Dora Restrepo, and three other individuals had been arrested for possession of cocaine on March 14, 1975. The warrant was transferred to the U.S. Marshal's Office of this District, by the U.S. Marshal's Office, Southern District of New York ("SDNY").

The warrant and the documents attached contained the following information: *name:* Manuela Rodríguez; social security number: 580–94–7198; *sex:* female; *height:* 5'0"; *weight:* 140 pounds (back in 1975); *race:* white; *place of birth:* Naranjito, Puerto Rico; *citizenship:* United States; *date of birth:* December 29, 1942; *eyes:* brown; *hair:* brown; *mother:* deceased; *father:* deceased; *identifying characteristics:* scar on stomach, right-handed.

Prior to executing the arrest warrant, the deputies contacted U.S. Magistrate Schmidt Monge. He instructed the deputies that if they could not produce the subject (Rodríguez) by that same afternoon, she should be committed to a detention facility and brought before him the following day. The magistrate, on the same day of the arrest, issued a *Commitment Order* to that effect, pursuant

to Rule 40 of the Federal Rules of Criminal Procedure.

The information provided by Rodríguez when she was interviewed by the two Deputies on the day of the arrest matched exactly the information provided by the SDNY, except for a scar on the forehead, a twenty (20) pound difference in weight, and—giving credence to Rodríguez' affidavit—a three (3) inch difference in height. The deputies determined that there was probable cause to believe Rodríguez was the subject described in the arrest warrant and arrested her.

Rodríguez was committed to the Hogar Crea, Quisqueya detention facility, for one night. The next day, the magistrate proceeded to release Rodríguez on a $20,000.00 unsecured personal recognizance bond. By then, the deputies had notified the U.S. Marshal's Office in the SDNY of the arrest and requested a certified copy of the indictment, photographs of the fugitive, and the original arrest warrant. These documents were needed for removal proceedings.

The photographs arrived on February 10, 1990. Upon examining the photographs, personnel of the Marshal's Office and the U.S. Attorney's Office from this district determined that Rodríguez was not the fugitive they were pursuing, and promptly thereafter, the U.S. Attorney's Office moved to dismiss the proceedings against her. The Magistrate granted the motion. On January 15, 1992, plaintiffs filed administrative tort claims with the U.S. Marshal's Service in accordance with 28 U.S.C. § 2675. All claims were denied via certified letters dated March 17, 1992. On September 2, 1992, plaintiffs filed this cause of action for illegal arrest and the Marshal's failure to promptly take her before the magistrate. The government responded by filing a motion for summary judgment, which was timely opposed by plaintiffs.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is an appropriate remedy "if the pleadings, depositions, answers to interrogatories, and admission of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(c) of the Fed.R.Civ.P.; *Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). Not all conflicts of fact will bar summary judgment. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original); *see also Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 7–8 (1st Cir.1990). A fact is material only if it affects the outcome of the suit. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

Once the party moving for summary judgment "put[s] the ball in play, averring an absence of the evidence to support the nonmoving party's case," the nonmovant must then establish a factual controversy to defeat summary judgment. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). The nonmoving party bears the burden of showing that summary judgment is not appropriate by coming forward with specific facts showing that there is a genuine issue for trial. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *R.J. Reynolds,* 896 F.2d at 8.

In deciding whether summary judgment is proper, the Court must view the record in the light most favorable to the party opposing such motion, and indulge all inferences favorable to that party. *Celotex v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). A nonmoving party's evidence cannot be merely colorable, but must be significantly probative to how differing versions of the facts justify a trial. *R.J. Reynolds,* 896 F.2d at 10. "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving

party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *R.J. Reynolds,* 896 F.2d at 8.

### III. FALSE ARREST AND DETENTION

■ Suits brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* are governed by the law of the place where the act or omission occurred. *Harrington v. United States,* 748 F.Supp. 919, 932 (D.P.R.1990) (citing *Massachusetts Bonding & Ins. Co. v. United States,* 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189 (1956)). "Under Puerto Rico law, the causes of action for false arrest and false imprisonment share identical elements." *Id.* at 933 (citing *Casanova v. González Padín,* 47 D.P.R. 462, 470 (1934); *Ayala v. San Juan Racing Corp.,* 112 D.P.R. 804, 813 (1982)). In *Ayala,* a security guard observed plaintiff giving several persons money; these persons did not place a bet. *Id.* The guard construed this as illegal betting, and informed a police officer at the race track. *Id.* Without further observation nor confirmation, the police officer arrested plaintiff. *Id.* The Court held that the arresting officer did not act as a reasonable person would in similar circumstances, and found the race track liable. *Id.*

■ *Harrington, supra,* stated that "in actions for false arrest and imprisonment brought against law enforcement officers the determination of what constitutes an unlawful detention shall be made according to the requirements established in Rule 11 of the Puerto Rico Rules of Criminal Procedure." *Id.* at 933. Rule 11 pertains to arrests performed by peace officers *without* the corresponding warrant.

■ An officer may arrest an individual if "he has reasonable cause for believing that the person about to be arrested has committed a felony, regardless of whether or not the said offense was in fact committed." P.R.Laws Ann. tit. 34, App. II, Rule 11. "Reasonable cause" has been defined as a "suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." *Harrington* at 933 (citing *Raldiris v. Levitt & Sons of P.R., Inc.,* 103 D.P.R. 778, 781 (1975);

*Parés v. Ruiz,* 19 P.R.R. 304, 331 (1913)). *See generally Hunter v. Bryant,* —— U.S. ——, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (in false arrest case, the question normally is whether the arresting officer could reasonably believe that the information he or she possessed constituted probable cause); *Lallemand v. University of Rhode Island,* 9 F.3d 214 (1st Cir.1993). It has long been held that an arrest warrant provides an officer with probable cause to effect the arrest of the person named in the warrant. *Fletcher v. McMahon,* 121 F.2d 729, 731 (D.C.Cir.1941), *cert. denied,* 314 U.S. 662, 62 S.Ct. 131, 86 L.Ed. 531 (1941).

"[T]he age of the arrest warrant does not affect [the deputies'] authority." *Morales Borrero v. López Feliciano,* 710 F.Supp. 32, 36 (D.P.R.1989). In the instant action, the Deputies had an arrest warrant from 1975. Plaintiffs do not question the validity of the 1975 arrest warrant, but rather argue that the arrest performed unreasonable, because they had doubts as to whether the person they were arresting was the same shown in the arrest warrant. This argument runs contrary to the deposition of Deputy Eugenio Díaz. Deputy Díaz stated that there was nothing in his interview of Rodríguez that would lead him to believe that she was not the subject on the arrest warrant. *See* deposition at pp. 57, 86–87. The information provided by Rodríguez matched the information he had available.

Plaintiffs also allege that the deputies should have obtained the photographs and fingerprints of the suspect before the arrest. Had this been done, the arrest would have been avoided. The warrant dated from 1975 pursuant to an arrest effected by the state authorities, the Mineola Police in New York. While there is a controversy as to when the SDNY requested and obtained the photographs and fingerprints of the subject, and when the SDNY provided them to U.S. Marshal's Office in Puerto Rico, we do not find this to be a controversy of material fact.

When the two deputies went to Rodríguez' residence on February 8, 1990, she told them her full name, social security number, place of birth, date of birth, the locations of her

scars, and that she was right-handed. The deputies were able to observe the color of her hair (brown), eyes (brown), and skin (white). This information matched what they had on the warrant and attached documents. Regarding the twenty-pound difference in weight, the same can be attributed to the fifteen years that had transpired since the previous arrest. The three-inch difference in height did not deter the officers from performing the arrest, particularly when all of the other information matched.

 An arresting officer is not compelled to investigate the suspect's claims of innocence until after the arrest process has been completed. *Benjamin v. United States,* 554 F.Supp. 82, 87 (E.D.N.Y.1982). The Deputy Marshals had a valid warrant and biographical information that to some degree had been corroborated by plaintiff herself. Thus, they proceeded to execute the arrest. Had the officers not arrested Rodríguez, who they reasonably believed was the subject on the arrest warrant, and had she fled the jurisdiction, criminal charges could have been brought against the Deputy Marshals, pursuant to 18 U.S.C. § 755[1], for failure to comply with their duty under Rule 4(d)(3) of the Fed.R.Crim.P. *See Benjamin* at 86.

Although the finger print argument appears to have a little more weight, we must make clear that developing and analyzing fingerprints is not a process to be done by officers without proper training. As to the photograph, it would have been ideal to have a recent photograph of the subject on the day of the arrest. However, it should be emphasized that fifteen years had transpired since the date of the arrest. Changes during that period are to be expected.

In *Francois v. United States,* 528 F.Supp. 533, 535 (E.D.N.Y.1981), plaintiff was arrested, even after he showed the officers his passport. Mr. Francois' parents had been shown a photograph of the subject the officers were pursuing, and told the officers that it was of their son. The officers used the photograph, together with the statement by the parents to the effect that the photograph depicted their son, to arrest Mr. Francois, who was not the subject. *Id.* *See also Mensh v. Dyer,* 956 F.2d 36, 39–40 (4th Cir. 1991).

Applying the *Harrington* standard to the facts of this case, we find that plaintiffs did not demonstrate that the Deputy Marshals lacked reasonable cause to believe Rodríguez was the person named on the arrest warrant related to possession of cocaine in 1975. *Harrington* at 933. Further, plaintiffs did not show that the officers acted with malice when they arrested and committed plaintiff overnight.

## IV. UNDUE DELAY

 In the complaint, plaintiffs allege that the deputies failed to bring Rodríguez before a Magistrate without undue delay. As has been discussed, the officers had a valid arrest warrant when they left for plaintiff's residence on February 8, 1990. *Morales Borrero v. López Feliciano,* 710 F.Supp. at 36. The deputies contacted the Magistrate prior to the arrest; he instructed them that, if they could not bring the subject before him by the end of business that day, they should commit her to a detention facility overnight. Accordingly, a *Commitment Order* was issued by the Magistrate on February 8, 1990. Plaintiff was taken before the Magistrate the following morning.

We agree with defendant that plaintiffs have failed to bring to the attention of this Court any statute, regulation or rule in effect at the time relevant to this action that would have required the Magistrate to see Rodríguez immediately after the arrest, or that the arrest be completed before 5:00 p.m. Thus, plaintiffs' bare allegations regarding the failure to bring Rodríguez before the Magistrate without undue delay are unsupported by any material facts.

**WHEREFORE,** in view of the above, defendant's motion for summary judgment is hereby **GRANTED,** and the complaint is

---

1. 18 U.S.C. § 755 provides:
 Whoever, having in his custody any prisoner by virtue of process issued under the laws of the United States by any court, judge, or commissioner ... negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

hereby **DISMISSED.** Judgment shall be entered accordingly.

**SO ORDERED.**