Anthony DIRIENZO, III

v.

**UNITED STATES of America.**

**No. Civ. N–85–200 (PCD).**

United States District Court,
D. Connecticut.

July 12, 1988.

Mark D. Arons, Ginsberg, Ginsburg & Alderman, West Haven, Conn., for plaintiff.

Frank H. Santoro, Asst. U.S. Atty., New Haven, Conn., for defendant.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

Plaintiff brings this action against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) and § 2680(h), alleging negligence, false arrest, and false imprisonment by agents of the Federal Bureau of Investigation.[1] Defendant and plaintiff move for summary judgment.

*Facts*

Plaintiff is a former New Haven police officer and former Deputy United States Marshal. His lawsuit arises from an unfortunate case of mistaken identity, the outlines of which are not in dispute. On September 9, 1981, a branch of the Chemical Bank in New York City was robbed by a man carrying a handgun. Earlier that day, another robbery attempt at a New York City branch of CitiBank, apparently by the same man, had been foiled by bank employees. Bank surveillance photographs of the Chemical Bank robbery were distributed by the FBI in a flyer describing the robbery. In mid–1982, an informant tentatively identified plaintiff from the flyer as the person depicted in the bank photographs. In January 1983, FBI Special Agent Ford Cole showed the bank photographs to three members of the New Haven police force who had worked with plaintiff.[2] All three identified plaintiff as

---

1. Plaintiff's Second Amended Complaint also alleges violations of the fourth and fourteenth amendments to the constitution. However, plaintiff does not press these alleged constitutional violations as independent grounds for relief. *See Birnbaum v. United States,* 588 F.2d 319, 327–28 (2d Cir.1978) (violation of federal constitutional right not a separate ground for relief under Federal Tort Claims Act); *cf. Carlson v. Green,* 446 U.S. 14, 20, 23, 100 S.Ct. 1468, 1472, 1474, 64 L.Ed.2d 15 (1980) (victim of intentional misconduct by federal officials may bring Federal Tort Claims Act action against United States, as well as *Bivens* action against officials alleged to have infringed constitutional rights, but only if state in which the misconduct occurred would permit a cause of action for that misconduct).

2. These officers included Commander of Detectives John Maher and Officer Michael Zarnowski. Zarnowski reported that he had been plaintiff's roommate for four months in 1981 and

the bank robber in the photographs. Plaintiff's Exhibit ("P.Ex.") E, J, K. Two also stated that plaintiff owned a handgun. P.Ex. E, K. On January 28, 1983, on the basis of these identifications, FBI Special Agent James Pitman executed a criminal complaint in the Southern District of New York charging plaintiff with a violation of 18 U.S.C. § 2113(d) in the Chemical Bank robbery and seeking a warrant for his arrest. P.Ex. A. A warrant for plaintiff's arrest was issued the same day by a federal magistrate. Defendant's Exhibit ("D.Ex.") 4. On February 8, 1983, while vacationing in Florida with his wife, plaintiff was arrested by local police and Special Agent Flynn of the FBI pursuant to the warrant. P.Ex. C. He was held overnight, then ordered to appear in the Southern District of New York for arraignment. On March 2, 1983, he was indicted for the bank robbery by a grand jury sitting in the Southern District.

From the beginning, plaintiff denied the charge. Fingerprints taken from a newspaper handled by the bank robber did not match those of plaintiff. P.Ex. B–1, B–2, U. On March 30, 1983, a witness to the CitiBank robbery attempt viewed a photo array including plaintiff's photograph, but did not identify him as the robber. P.Ex. R. Plaintiff volunteered to undergo two polygraph tests. The first was inconclusive, but the second indicated no deception in his denial of involvement. P.Ex. F. Thereupon, the United States Attorney for the Southern District of New York formally declined to prosecute and the case was nolled on May 9, 1983. P.Ex. G. In September 1983, another person, then incarcerated on state charges, confessed to the robberies. P.Ex. H.

*Discussion*

A. *Summary Judgment Standard*

Fed.R.Civ.P. 56(c) provides, in part, that summary judgment shall be rendered only when a review of the entire record demonstrates "that there is no genuine issue as to any material fact." The burden falls on the moving party to establish that no relevant facts are in dispute.

*Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975); *accord Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 [90 S.Ct. 1598, 1608, 26 L.Ed.2d 142] ... (1970). Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 [82 S.Ct. 993, 994, 8 L.Ed.2d 176] ... (1962) (*per curiam*); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Therefore, not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them. *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981), *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 [106 S.Ct. 2505, 2513, 91 L.Ed.2d 202] ... (1986).

Properly employed, summary judgment allows the court to dispose of meritless claims before becoming entrenched in a frivolous and costly trial. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, [——] U.S. [——], 107 S.Ct. 1570 [94 L.Ed.2d 762] ... (1987). It must, however, be used selectively to avoid trial by affidavit. *Judge v. Buffalo*, 524 F.2d 1321 (2d Cir.1975). Hence, the fundamental maxim remains that on a motion for summary judgment a court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Heyman*, 524 F.2d at 1319–20. As long as the plaintiff has adduced sufficient facts to substantiate the elements of his claim, summary judgment is inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] ... (1986).

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57–58 (2d Cir.1987).

B. *Federal Tort Claims Act*

The Federal Tort Claims Act, 28 U.S.C. § 1346(b), generally authorizes suits against the United States for damages

---

that plaintiff had lived in New York City in the

period 1980–81. Plaintiff's Exhibit E.

for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

This broad waiver of sovereign immunity is subject to the limitations contained in §§ 2671–2680. Thus, 28 U.S.C. § 2674 specifies the scope of the government's liability with regard to acts or omissions of its employees:

The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances

. . . .

■ The waiver of sovereign immunity expressly extends to suits "with regard to acts or omissions of investigative or law enforcement officers of the United States Government ... [on] any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h)(1974 amendment). However, where acts or omissions of law enforcement officers cause unjustified arrest, prosecution, or imprisonment, the Federal Tort Claims Act limits the government's liability to instances where the officers act tortiously. *Arnsberg v. United States*, 757 F.2d 971, 978 (9th Cir.1985); *cf. Caban v. United States*, 728 F.2d 68, 73–74 (2d Cir.1984) (government not liable for false imprisonment where INS agent was privileged to detain plaintiff).

■ "The reference in § 1346(b) to 'the "law of the place" means the "whole law" of the state where the incident took place.' " *Caban*, 728 F.2d at 72, quoting

*Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir.), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976). Thus, the court looks to whatever law, including federal law, the state courts would apply in like circumstances involving a private defendant. *Caban*, 728 F.2d at 72. While the second amended complaint does not set forth separately labeled theories or causes of action, plaintiff alleges that he was falsely arrested and imprisoned in Florida, Second Amended Complaint, ¶ 5, and that his arrest and prosecution for the bank robbery was caused by the negligence of law enforcement officers employed by the FBI. *Id.*, ¶ 10. The acts and omissions of which plaintiff complains took place in Florida, New York, and Connecticut.

*1. False Arrest/False Imprisonment*

■ Plaintiff was arrested in Florida by FBI Agent Flynn with the assistance of local police, pursuant to a warrant issued by a federal magistrate in the Southern District of New York. He was held overnight in a Dade County jail. Since plaintiff's arrest and imprisonment occurred in Florida, the tort law of that state governs his claim in respect of the arrest.[3] *See Caban*, 728 F.2d at 72; *Benjamin v. United States*, 554 F.Supp. 82, 85 (E.D.N.Y. 1982).

■ Under Florida law, the causes of action for false arrest and false imprisonment share identical elements. *Weissman v. K–Mart Corp.*, 396 So.2d 1164, 1165 n. 1 (Fla.App.1981). However, under Florida law, like that of most jurisdictions, the arrest and detention of an innocent person carries no tort liability where the arrest and imprisonment was otherwise privileged or justified by law. *Fisher v. Payne*, 93 Fla. 1085, 113 So. 378, 380 (1927); *Johnson v. Weiner*, 155 Fla. 169, 19 So.2d 699, 799 (1944); *see, e.g.*, Restatement (2d) Torts, § 122–124 (1965); *accord Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335

**3.** Federal agents making arrests have privileges and duties different from those of private individuals. Thus, because the "circumstances" of an arrest made by an FBI agent acting pursuant to a warrant are not "like" those of a citizen's arrest within the meaning of § 2674, the govern-

ment's liability is governed by the Florida law of arrests pursuant to a warrant and not the Florida law of citizens' arrests. 28 U.S.C. § 2674; *see Arnsberg*, 757 F.2d at 978–79 (adopting reasoning of *Caban*, 728 F.2d at 73–74).

N.E.2d 310, 314, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); *Zanghi v. Incorporated Village,* 752 F.2d 42 (2d Cir.1985) (finding of probable cause defeats false imprisonment claim under New York law). It is well settled that an arrest made pursuant to a valid warrant issued by a court of competent jurisdiction is privileged and cannot support an action for false arrest. *Johnson,* 19 So.2d at 700; *accord* Restatement (2d) Torts, § 35, comment a (1965); *Benjamin,* 554 F.Supp. at 85 (applying New York law under Federal Tort Claims Act); *Clewley v. Brown Thomson, Inc.,* 120 Conn. 440, 444, 181 A. 531 (1935).

■ Applying these principles to the undisputed facts, it is clear that plaintiff's arrest and imprisonment were not tortious. The arrest was made pursuant to an arrest warrant issued by a federal magistrate with subject matter jurisdiction over the offense charged. The process was facially valid and plaintiff was the individual named in the warrant. Plaintiff does not argue otherwise.

■ However, despite the existence of a valid warrant, plaintiff maintains that his arrest was unreasonable because the FBI agents negligently failed to investigate further. He argues that, had the agents shown photographs of him to witnesses present at the robbery, considered his law enforcement background, or compared his fingerprints to those on the newspaper, exculpatory information would have surfaced and the agents would not have sought his arrest. However, the possibility and feasibility of further investigation is legally irrelevant to a claim for false arrest, where the arrest is made pursuant to a valid warrant.[4] *See Benjamin,* 554 F.Supp. at 86–87. Even if information was thus negligently omitted from the criminal complaint and warrant application, as plaintiff argues, no action for false arrest would lie. Only a knowing, intentional, or reckless omission or fabrication of material in-

formation in the application would invalidate the warrant and generate tort liability for the subsequent arrest. *See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228, 1248 (2d Cir.1979), *cert. denied,* 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *Boose v. City of Rochester,* 71 A.D.2d 59, 421 N.Y.S. 2d 740, 746 (1979); *cf. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Plaintiff does not allege that any omission from the warrant application was intentional or even reckless on the part of the agents, nor is there support for such a claim in the record. Accordingly, because the arrest was made pursuant to a valid warrant naming the plaintiff, there can be no liability for false arrest or imprisonment as a matter of law.

### 2. *Negligence, Abuse of Process and Malicious Prosecution*

■ Wholly apart from any claim for false arrest, plaintiff argues that the government may be held liable for the alleged negligent acts and omissions of the FBI agents in instituting and continuing his criminal prosecution. Thus, plaintiff maintains that there can be no grant of summary judgment where there is a genuine issue as to whether the agents' conduct of the investigation was reasonable under all the circumstances.

The actions and omissions in the conduct of the investigation, other than plaintiff's arrest itself, were centered in New York. The robbery occurred in that state; Agent Pitman executed a criminal complaint against plaintiff there; and the entire course of plaintiff's subsequent prosecution occurred in the United States District Court for the Southern District of New York. Accordingly, the law of New York governs the question of whether the government may be held liable for the agents' alleged negligence in conducting the investigation. *Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d

---

**4.** The arresting officer need not inquire into the merits of a facially valid arrest warrant before execution. Indeed, once probable cause for the arrest has been established by a judicial officer and an arrest warrant has been issued, the war-rant compels arrest and a law enforcement officer ignores this command at his peril. *See* Fed. R. Crim. P. 4(d)(3); *Benjamin,* 554 F.Supp. at 86.

15 (1980); *see, e.g., Deary v. Evans,* 570 F.Supp. 189, 200–01 (D.V.I.1983) (applying Virgin Islands law to abuse of process and malicious prosecution claims), *rev'd on other grounds,* 746 F.2d 185 (3d Cir.1984). Defendant is liable for the acts of the agents only if New York would impose such liability upon a private person in like circumstances—that is, only if the agents' actions were tortious under New York law. § 2674; *Arnsberg,* 757 F.2d at 978, 980 (court should confine inquiry to whether agents acted tortiously); *cf. Caban,* 728 F.2d at 72.

▪ At the outset, plaintiff's contention that the agents' conduct is to be judged according to ordinary negligence principles must be rejected. *Cf. Caban* at 72 n. 2 (rejecting plaintiff's application of negligence concepts to his detention by INS agent). The gravamen of plaintiff's claim is that the agents instituted and continued a criminal prosecution against him, an innocent person. However, neither New York nor the common law imposes liability upon even a *private* person for mere negligence in instituting or continuing a criminal prosecution for a crime which has actually occurred.[5] *Howell v. Davis,* 58 A.D.2d 852, 396 N.Y.S.2d 866, 867–68 (1977) (requirements of malicious prosecution or abuse of process cannot be bypassed by pleading prima facie tort), *aff'd,* 43 N.Y.2d 874, 403 N.Y.S.2d 496, 374 N.E.2d 393 (1978); *see Benjamin,* 554 F.Supp. at 86 (where innocent person is arrested on valid warrant naming him, action for malicious prosecution is only remedy available under New York law); *cf. Feinberg v. Sak's & Co.,* 83 A.D.2d 952, 443 N.Y.S.2d 26, 27 (1981) (analysis limited to false arrest and malicious prosecution); *Lawrence v. Police Dept. of the City of Syracuse,* 81 A.D.2d 1006, 440 N.Y.S.2d 105, *aff'd,* 55 N.Y.2d 737, 431 N.Y.S.2d 639, 431 N.E.2d 639 (1981); *Rosario,* 605 F.2d at 1248 (defendant's liability based on knowledge of lack of probable cause); *Boose,* 421 N.Y.2d at 747 (action for malicious prosecution available to test error of arresting officer); *see generally Broughton,* 335 N.E.2d at 310 (distinguishing false arrest from malicious prosecution or abuse of process).

To recover on a claim of malicious prosecution under New York law, plaintiff must establish (1) that defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice. *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1307, 396 N.Y.S.2d 612, 614 (1977); *Russo v. State of New York,* 672 F.2d 1014, 1018 (2d Cir.1982); *cf.* Restatement (2d) Torts, § 653 (1976) (purpose other than that of bringing offender to justice). In an action for malicious prosecution, plaintiff has the burden of pleading and proving want of probable cause. *See, e.g., Broughton,* 335 N.E.2d at 314; Restatement (2d) Torts, § 672(1)(c) (1976). Defendant maintains that summary judgment must be granted because at all times up until the prosecution of plaintiff was withdrawn, the agents had probable cause to believe he committed the robbery.

▪ Where the underlying facts are not in dispute, whether the set of facts within the knowledge of the agents constituted probable cause is a question of law. Restatement (2d) Torts, § 673(1)(c) (1976); *see Munoz v. City of New York,* 18 N.Y.2d 6, 271 N.Y.S.2d 645, 218 N.E.2d 527, 530 (1966) (where no dispute about the facts which led to the prosecution or the inferences to be drawn by a reasonable person from them, probable cause may be decided as matter of law.); *Muller v. Wachtel,* 345 F.Supp. 160, 162 (S.D.N.Y.1972). Probable cause exists where "facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy in-

---

5. The government accepts the applicability of negligence principles, but argues that the agent's duty of care is to be measured by reference to federal law governing arrests and prosecution on probable cause. *See* Defendant's Memorandum at 6–7. However, both sides appear to agree that the absence of probable cause is essential to plaintiff's claim. *See* Plaintiff's Memorandum at 8, 15. Thus, the result under that analysis would be indentical to that reached below.

formation are sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been committed by the person under inquiry. *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *see also Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Probable cause is evaluated in light of the collective knowledge of the law enforcement agency rather than the knowledge of a particular agent. *United States v. Rosario*, 543 F.2d 6, 8 (2d Cir.1976).

■ Here, there is no dispute as to the information actually in the possession of the agents when the prosecution was instituted. Plaintiff disputes only their failure to investigate further to obtain additional information which, he claims, was readily available. When the criminal complaint was filed, the information known to the agents was that a bank robbery had been committed in New York City by an armed gunman; that three New Haven police officers familiar with the plaintiff had identified him as shown in the bank photographs of the robbery; and that, according to plaintiff's former roommate, plaintiff was living in New York City at the time of the robbery, owned a handgun, and had an arrest record. P.Ex. A, E.J.K. The agents were justified in acting upon this information, even if some of it later turned out to be false. *Munoz*, 18 N.Y.2d 6, 271 N.Y.S.2d 645, 218 N.E.2d at 530. Moreover, as plaintiff conceded, *see* P.Ex. E, he strongly resembles the person depicted in the bank photographs. P.Ex. S, T.

Plaintiff further argues that witnesses to the robbery gave conflicting descriptions which did not match plaintiff's physical appearance. The descriptions, however, suggest a strong resemblance between plaintiff and the man who robbed Chemical Bank. They did not eliminate him as a suspect. At his arrest, plaintiff was described by Agent Flynn as a 6" tall, white male; 190 lbs.; with brown hair, and brown eyes. He was then thirty-one. P.Ex. C. In photographs taken at that time, he wears a mustache. P.Ex. T. The Chemical Bank robber was described by several witnesses as a white male in the height range from 5'7" to 5'10" tall, between 140 and 170 lbs., of slim build, with brown hair and eyes. *See* P.Ex. M, N, O, P, Q. Witness' estimates of the robber's age range from twenty-five to thirty-five years, centering on thirty years. P.Ex. M, Q. The bank photographs clearly show the robber wearing a mustache. P.Ex. S.

The information available to the agents at plaintiff's arrest was sufficient to justify a man of reasonable caution in believing that plaintiff had committed the robbery. That information, as a matter of law, constituted probable cause to believe that plaintiff had committed the robbery. Therefore, no action for malicious prosecution will lie.[6] *Zanghi*, 752 F.2d at 45; *compare Deary*, 570 F.Supp. at 196, 200 (finding probable cause and granting summary judgment on malicious prosecution claim where arresting officers identified plaintiff from bank photographs), *rev'd*, 746 F.2d 185, 190 (3d Cir.1984) (holding that in a § 1983 action issue of probable cause is for the jury); *Miss Universe, Inc. v. Patricelli*, 753 F.2d 235 (2d Cir.1985); *cf. United States v. Hayes*, 553 F.2d 824, 826 (2d Cir.) (finding of probable cause based on identifi-

---

**6.** Probable cause is based on the facts known to the agents at the time of the complaint. However, under New York law, the magistrate's finding of probable cause in issuing the warrant creates a presumption that probable cause existed. *See Broughton*, 335 N.E.2d at 313, 314–15; *McSorley v. Consolidated Rail Corp.*, 581 F.Supp. 642, 643 (S.D.N.Y.1984); *Hamid v. Jamil*, 580 F.Supp. 855 (E.D.N.Y.1984); *cf. Russo*, 672 F.2d at 1018. Plaintiff's subsequent indictment by the grand jury creates a similar presumption that probable cause existed at the time of the indictment. *Broughton*, 335 N.E.2d at 315; *McSorley*, 581 F.Supp. at 643. The presump-

tions of probable cause generated by the issuance of the warrant and the indictment are rebuttable only where the plaintiff establishes fraud, perjury or the misrepresentation or falsification of evidence. *See McSorley*, 581 F.2d at 643–44. As there is no evidence of such conduct in the procurement of either the warrant or the indictment, the effect of the presumption under New York law is thus an alternative ground for summary judgment in defendant's favor on this claim, since the evidence on which each were based is not different from the information on which the agents acted.

cation from bank photographs), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977).

Plaintiff contends essentially that the agents failed to discover information which might have exculpated him. For example, the New Haven police officers were not shown photographs of plaintiff for comparison with the bank photographs. The witnesses to the robbery were not shown a photo array including plaintiff's picture nor was a line-up arranged. Plaintiff maintains that the procedure by which the bank photographs were shown to the officers was suggestive and in contravention of the FBI's own procedures. In addition, plaintiff's fingerprints did not match those on the newspaper allegedly handled by the bank robber. Plaintiff also argues that the agents should have investigated his character and law enforcement background.

▮▮▮ Once probable cause was established, the agents' authority to act is established and their conduct cannot be measured by an affirmative duty to exhaust all possible avenues of investigation. While a line-up or photo array identification procedure might have been used to corroborate probable cause, such a procedure was not necessary to create probable cause initially nor was the procedure used unnecessarily suggestive. . In fact, the bank photographs were more reliable evidence of the robber's identity than were the memories of witnesses, more than a year after the event. A photograph comparison can, of itself, establish probable cause for an arrest. *See Hayes*, 553 F.2d at 826. Here, there could have been no in-person comparison between plaintiff's person and the bank photographs before his arrest because plaintiff's whereabouts were unknown. The photographs were shown to three police officers who knew him, at least one of whom knew him well, and all three independently identified the bank robber as plaintiff. P.Ex. E,

F, K. Thus, the identification of plaintiff was sufficiently reliable and credible to establish probable cause for his prosecution.[7]

Even if the agents had performed additional investigation, probable cause would not have been vitiated. That plaintiff's fingerprints did not match the print found on the newspaper is of limited relevance to a probable cause determination because there was no reason to believe that only the bank robber had handled the newspaper. Indeed, the prints did not match those of the person who later confessed to the robberies. *See* D. Ex. 1. Also, the available information available about plaintiff's character and reputation was mixed, at best. For example, Officer Zarnowski advised that plaintiff was a drug user and prone to threaten others with firearms. P.Ex. E. In addition, Commander Maher reported that in 1982 plaintiff had been arrested by the New Haven police for impersonation of a police officer. P.Ex. K. Consideration of this information would not have altered the probable cause picture significantly. The conduct of the agents is to be judged on relation to the information known to them when they acted. None of the facts later developed were necessarily, reasonably known to the agents, nor reasonably apparent or ascertainable by them at that time. Nor were the facts on which probable cause was premised reasonably or apparently suspect at that time. The fact that later developed facts or avenues of investigation, not reasonably apparent when the agents acted, counter the evidence on which they acted cannot be a foundation for liability for acts which were justified by the facts known when the agents acted.

Plaintiff maintains that, even if there was probable cause to institute the prosecution, there was no probable cause to continue the prosecution after further information and the opportunity to investigate

---

7. Arguably, the use of the bank photographs was not in accordance with FBI guidelines for such photographs. *See* P.Ex. L, ¶¶ 6–4.2. However, the guidelines are not mandatory. They do not expressly cover the viewing of bank photographs by law enforcement officers who may have knowledge of a suspect, a situation which differs in many respects from that where such photographs are viewed by witnesses to the crime. Compliance with such internal investigative guidelines is not a requirement for the existence of probable cause and the procedure followed was not unreasonable under the circumstances.

became available. Continued prosecution after facts sufficient to exonerate the accused have been provided may give rise to an action for malicious prosecution under New York law. *Benjamin,* 554 F.Supp. at 86; *Feinberg,* 443 N.Y.S.2d at 27; *Oakley v. City of Rochester,* 71 A.D.2d 15, 421 N.Y.S.2d 472, 474 (1979), *aff'd,* 51 N.Y.2d 908, 434 N.Y.S.2d 977, 415 N.E.2d 966 (1980). In March 1983, a witness to the bank robbery was shown a photo array of six persons, including plaintiff. The witness initially selected two of the persons, one the plaintiff, as possible suspects; subsequently, the witness selected the other person as the robber. *See* P.Ex. R. Plaintiff argues that this identification was sufficient to exonerate him and to vitiate the probable cause which existed for his arrest. While that process raised doubt as to plaintiff's identification, it did not destroy the probable cause based on the information provided by the New Haven officers.

 Even if the information had completely exculpated plaintiff, however, plaintiff could not prevail on his claim of malicious continuation of the prosecution. The prosecution of plaintiff was initiated by the FBI agents, as discussed above, upon probable cause and, therefore, nontortious. After his arrest, the prosecution was under the control not of the FBI agents but of the United States Attorney for the Southern District of New York. In order for there to be liability for malicious *continuation* of the prosecution once control has passed into the hands of the prosecuting attorney the defendant (i.e., the FBI agents) must be shown to have taken an active part in the proceedings:

> [T]he defendant must take an active part in [the] prosecution after learning that there is no probable cause for believing the accused guilty. It is not enough that he appears as a witness against the ac-

cused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. The fact that he initiated the proceedings does not make him liable [for continuation of the prosecution] merely because he intentionally refrains from informing a public prosecutor, into whose control the prosecution has passed, of subsequently discovered facts that clearly indicate the innocence of the accused, even though they have the effect of convincing him that this is the fact.

Restatement (2d) Torts, § 655, comment c (1977). *See, e.g., Whittaker v. Duke,* 473 F.Supp. 908, 911 (S.D.N.Y.1979) (applying New Jersey law).

 Here, plaintiff does not claim that the FBI agents actively procured or pressed his continued prosecution upon the United States Attorney, nor does anything in the record suggest that they did so. Indeed, the FBI administered two polygraph tests to plaintiff at his own request, in aid of his attempt to prove his innocence. *See* P.Ex. F. The decision to continue and then to decline prosecution of plaintiff was made by the Assistant United States Attorney assigned to the case, approved by his superior.[8] P.Ex. G.

There is nothing to suggest that this decision was resisted by any FBI agent. Plaintiff has presented nothing to rebut the inference that control of the prosecution of plaintiff after his arrest passed wholly into the hands of the United States Attorney's Office and that any decision to continue his prosecution was made independently by that office. As plaintiff is unable, as a matter of law, to make out a necessary element of the cause of action, i.e., that the

---

**8.** Plaintiff may not rely upon the acts or omissions of the prosecuting attorney to hold the government liable for malicious prosecution. The United States Attorney and his assistants are not "law enforcement agents" for whose intentional torts the government is liable under 28 U.S.C. § 2680(h). *See Gray v. Bell,* 542 F.Supp. 927, 933 (D.D.C.1982), *aff'd,* 712 F.2d 490 (D.C.Cir.1983); *United States v. Rubin,* 573

F.Supp. 1123, 1124–25 (D.Colo.1983). Moreover, as a matter of New York law the public prosecutor's decision whether or not to proceed with prosecution is absolutely privileged from civil liability. *See Caminito v. City of New York,* 256 N.Y.S.2d 670, 680, (N.Y.Sup.1965) (police officer, but not District Attorney, liable for malicious prosecution).

agents had a positive role in the continued prosecution, no liability may be imposed upon defendant by reason of the continued prosecution. *See Oakley,* 421 N.Y.S.2d at 474 (verdict on malicious prosecution set aside where no proof of lack of probable cause after arrest, where arrest made on probable cause).

### 3. *Abuse of Process*

Plaintiff argues that his second amended complaint also states a claim for abuse of process. As plaintiff acknowledges, the necessary element of abuse of process is the use of legal process, civil or criminal, primarily to accomplish a purpose for which it is not designed. Restatement (2d) Torts, § 682 (1977). Plaintiff's second amended complaint is utterly devoid of any allegation of malice or improper purpose on the part of the FBI agents. Rather, it alleges that the agents arrested and prosecuted him negligently and without probable cause. However, probable cause has been found to have existed throughout plaintiff's prosecution. In addition, plaintiff has adduced no evidence from which any inference of improper purpose could reasonably be drawn. The actions taken by the agents appear to have been solely in furtherance of the investigation of the robbery. Even assuming the facts as alleged by plaintiff, there was no abuse of process as a matter of law. *See Howell,* 396 N.Y.S.2d at 868.

### *Conclusion*

Plaintiff's claim clearly demonstrates a lack of any impropriety on his part leading to what turned out to be a case of mistaken identity. The unfortunate quality of this event in plaintiff's life is more manifest, in retrospect, from the fact that when additional, relevant facts came to light, facts which were not actually nor reasonably apparent earlier, plaintiff's identification was truely mistaken. Fair play concepts suggest that one adversely impacted by actions of others which he did not actively cause and could not have prevented should not go uncompensated. Yet, imposition of liability

for compensation is not merely a matter of fair play, it requires that a claim conform to established legal principles. In any society, interrelation of people precipitates friction and detriment, not all of which is compensable. Where one such as plaintiff has suffered detriment and is unable to assert a claim which conforms with established legal principles for liability, he is the innocent victim of the effects of necessary and lawful conduct. That is a price of living in a society. It is unfortunate, but a necessary price if society is to live by established law as opposed to a general concept that every detriment entitles one to compensation.

Plaintiff was arrested on a valid warrant and the prosecution was based on probable cause. As a matter of law, he has not made out a claim for false arrest, malicious prosecution, or abuse of process. He has shown that facts learned subsequent to his arrest, not reasonably known prior thereto, raised doubts as to the propriety of his arrest and prosecution, but this showing does not vitiate the factual and lawful basis on which the agents acted and thus it cannot form a basis for the imposition of liability as claimed herein. Accordingly, defendant's motion for summary judgment is granted and the complaint is dismissed in its entirety.[9]

For the reasons stated above, plaintiff's motion for summary judgment is denied.

SO ORDERED.

---

**9.** It is unnecessary to reach defendant's claims that it is entitled to assert the qualified immunity of the FBI agents as a defense to liability under the Federal Tort Claims Act, that service of the complaint was defective, or that the previous dismissal of plaintiff's complaint was improvidently reopened.