■ ROBERT O. WILLIAMS, Respondent, v CITY OF BUFFALO et al., Appellants.—Judgment affirmed, with costs. Memorandum: At about 4:30 A.M. on September 11, 1972 two police officers employed by the City of Buffalo were called to investigate a suspicious man at the door of a residence. The man, plaintiff in this action, appeared intoxicated and was detained at the scene while the officers radioed their dispatcher for a warrant check. They advised the dispatcher of plaintiff's full name, the month and year of his birth (April, 1943) and his current address. The dispatcher responded that there was a warrant for a Williams, address 204 Genesee Street, date of birth July 9, 1943 and that he was wanted for charges involving a jail riot at the Erie County Penitentiary. Since the address differed from that which plaintiff had given the officers, they asked him whether he had ever lived at 204 Genesee Street. He responded that he had. The officers then arrested him and took him to precinct headquarters where he was booked and incarcerated. He was arraigned on September 12, 1972 and held until November 1,

1972 when it was discovered that although he had in fact been a prisoner in the penitentiary on the date of the riot, he was in a different section from that in which the riot occurred. The Robert Williams charged in the warrant was another man. Plaintiff brought this action asserting several causes of action, and the matter was submitted to the jury on the theory of false imprisonment based upon the negligence of the police wrongly in identifying plaintiff. Generally, when there is an alleged unlawful arrest made pursuant to a valid warrant, the appropriate form of action is malicious prosecution, not false imprisonment *(Broughton v New York State,* 37 NY2d 451, 456-457, cert den *sub nom. Schanbarger v Kellogg,* 423 US 929; *Boose v City of Rochester,* 71 AD2d 59; *Smith v County of Livingston,* 69 AD2d 993; *Lincoln First Bank of Rochester v Siegel,* 60 AD2d 270, 276). In such circumstances the action for false imprisonment is barred and the arrest privileged because the arresting officer is duty bound to execute the warrant *(Craner v Corbett,* 27 AD2d 796; *Nastasi v State of New York,* 275 App Div 524, affd 300 NY 473; Prosser, Torts [4th ed], § 11, p 49). This privilege is not absolute, however. When there are two or more persons to whom the name on the warrant applies with complete accuracy the officer is privileged to arrest the person whom he reasonably believes is the person intended only after using diligence to verify the defendant's identity *(Craner v Corbett, supra; Maracle v State of New York,* 50 Misc 2d 348; Restatement, Torts 2d, § 125, Comment *d).* The determination of due diligence generally is a question of fact for the jury, and appellant here contends only that the jury's verdict on liability and damage is against the weight of the evidence. We review the proof in the light most favorable to plaintiff, as we must (see *Colegrove v City of Corning,* 54 AD2d 1093). The name on the warrant was "Robert Williams", no middle initial or address specified. Apparently, identity had been a problem when the police tried to execute the warrant earlier, however, because there are several penciled notations on it: "try 204 Genesee St"; "Gene A. Williams (Bobby)"; "DOB 11-26-44"; "710 Swan"; and at another place "204 Genesee St". This confusion was never cleared up and the misinformation on the warrant was fed into the police computer and later retrieved by the dispatcher when the arresting officers called him September 11. The conversation recorded on the transcript readily indicates the dispatcher's uncertainty as to the proper defendant. This confusion could have been resolved by further investigation, for the jail records revealed that there were at least three prisoners named Williams in the Erie County Penitentiary at the time of the riot, two of them named Robert Williams. The other two Williams were housed in the area of the jail where the riot occurred, but plaintiff was not. He obviously was not the intended defendant and the jury could find, as it did, that the police neglected to use reasonable care in investigating the case and ascertaining the proper defendant before executing the warrant. In assessing damages the jury was entitled to award plaintiff a sum which reasonably compensated him for the defendant's wrongful act, including loss of earnings, injury to reputation, and mental suffering such as indignity, humiliation, shame, and disgrace (see *Guion v Associated Dry Goods Corp. [Lord & Taylor Div.],* 56 AD2d 798, affd 43 NY2d 876). The jury's verdict may not be disturbed unless it is so excessive that it shocks the conscience of the court *(Welty v Brown,* 57 AD2d 1000, 1001). The damages for the false imprisonment were to be measured only to the time of arraignment. Any other damages sustained because of further detention were attributable to the tort of malicious prosecution (see *Broughton v State of New York, supra,* p 459; *Casler v State of New York,* 33 AD2d 305, 308). On September 11, 1972

plaintiff was 29 years old and unmarried. When arrested he was intoxicated and at trial he admitted that he was an alcoholic who had been hospitalized periodically for treatment of his alcoholism. He had been arrested and incarcerated previously in 1968-1969. Plaintiff testified that for several years before the arrest he had worked for a laundry and dry cleaners picking up clothes; that he was paid a commission; that his earnings varied from $80 to $150 per week and that as a result of the arrest and the widespread publicity which accompanied it, he lost his job. He tried to return to work briefly after the charges were dismissed, but he claims that the customers no longer trusted him with their clothes and his employer was obliged to discharge him. He worked intermittently as a day laborer thereafter. The jury obviously accepted plaintiff's testimony of lost employment and income and the humiliation which accompanied his attempt to return to work after the charges were dismissed, and based upon this evidence, we do not find the verdict excessive. All concur, except Moule, J., who dissents and votes to reverse the judgment and grant a new trial, in the following memorandum.

Moule, J. (dissenting). I dissent and would grant a new trial unless plaintiff stipulates to a reduction of the damage award to $2,500. Since plaintiff's income at the time of arrest was $80 to $150 per week in commissions, the jury award represents approximately one and one-half years' compensation at his highest pay rate. This is excessive in view of the fact that only one and one-half days of plaintiff's incarceration are attributable to the false imprisonment claim. (Appeal from judgment of Erie Supreme Court—false arrest.) Present—Simons, J. P., Hancock, Jr., Callahan, Doerr and Moule, JJ.