[763 NYS2d 635]

Henry Johnson, Respondent, v Kings County District Attorney's Office et al., Appellants.

Second Department, August 11, 2003

APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, New York City (*Larry A. Sonnenshein* and *Julian L. Kalkstein* of counsel), for appellants.

*The Cochran Firm, Schneider, Kleinick, Weitz, Damashek & Shoot*, New York City (*Johnnie L. Cochran, Jr., Brian J. Shoot, Diane Welch Bando* and *Derek Sells* of counsel), for respondent.

## OPINION OF THE COURT

S. MILLER, J. P.

This appeal presents an opportunity to settle issues of civil rights and municipal tort law. The primary question we face today is whether a citizen, justifiably arrested but allegedly detained for an unreasonably long time, may recover damages for deprivation of his rights pursuant to 42 USC § 1983. Under the facts of this case, we answer that question in the affirmative.

### I. *Factual Background*

On Saturday, June 13, 1998, at approximately 3:00 P.M., the plaintiff, Henry Johnson, was walking in the vicinity of West

23rd Street between Mermaid Avenue and Neptune Avenue in Coney Island carrying an open container of beer, when he was stopped by two uniformed police officers. According to Officer Dorcas A. Hiller, upon observing the plaintiff "consuming alcohol in public," she summoned him, and exited her police cruiser to confront him. Officer Hiller asked the plaintiff for his name, date of birth, and address, which he provided. Officer Hiller then radioed the plaintiff's information to "central" to check for any outstanding warrants. Officer Hiller was informed over her police radio that there was an outstanding fugitive warrant from South Carolina in the plaintiff's name.

The plaintiff immediately protested to Officer Hiller that she had the wrong person. He claimed that he had never been in South Carolina, and he explained that he had lost his wallet a short time ago, thus offering a possible explanation for the South Carolina warrant in his name. Officer Hiller was understandably undeterred, and the plaintiff was handcuffed and transported to the 60th Precinct.

Later that afternoon, Officer Hiller was directed to transfer the plaintiff to central booking in Brooklyn, where she requested a copy of the fugitive warrant from South Carolina to verify that the plaintiff was the same person wanted by authorities in that jurisdiction. The fugitive warrant matched the plaintiff's information with respect to his name, former Brooklyn address, date of birth, and race. However, the fugitive warrant did not match the plaintiff's height, as the subject of the fugitive warrant was listed as 5 feet 8 inches tall and the plaintiff was 6 feet 3 inches tall. There was also a discrepancy in social security numbers. No eye or hair color was specified on the warrant. The plaintiff repeatedly protested that he was not the subject of the fugitive warrant. Nevertheless, no further steps were taken at that time to confirm that he was in fact the person wanted in South Carolina. The plaintiff was photographed, fingerprinted, and placed in custody.

The next day, June 14, 1998, the plaintiff was arraigned in Criminal Court, Kings County. The plaintiff refused to waive extradition and alerted the court and the trial assistant from the Kings County District Attorney's office (hereinafter the District Attorney's office) that he was not the person wanted in South Carolina. The plaintiff requested that he be released on his own recognizance; the District Attorney's office asked that he be remanded without bail. The court denied bail and informed the plaintiff that he had a right to challenge his detention by petitioning for a writ of habeas corpus. The court

then adjourned the case until July 6, 1998, pending the outcome of extradition proceedings.

On June 15, 1998, the plaintiff was transferred to the Brooklyn house of detention. Approximately one week later the plaintiff was again transferred, this time to Rikers Island, where he remained incarcerated until July 6, 1998.

On June 29, 1998, 16 days after his arrest, the plaintiff submitted a petition for a writ of habeas corpus to the Supreme Court, Kings County, alleging that he was not the person wanted by South Carolina authorities, and that he had never been to South Carolina. The Supreme Court granted the writ on June 29, 1998, and scheduled a hearing for July 2, 1998.

The writ of habeas corpus was stamped "received" by the District Attorney's office on July 1, 1998. As would later be revealed during pretrial discovery, Andrew Calia, the manager of the District Attorney's office extradition unit, was the first employee of the District Attorney's office to attempt to confirm the plaintiff's identity when, on July 1, 1998, 17 days after the defendant's arrest, he telephoned South Carolina authorities to request photographs and fingerprints of the subject wanted in that state. Mr. Calia received a photograph of the individual wanted in South Carolina either that same day or the following day, July 2, 1998. Mr. Calia delivered the photograph to Assistant District Attorney Gregory Devine, who was scheduled to appear in court on July 2, 1998, presumably in regard to the plaintiff's habeas corpus petition. Although there is no account in the record of the habeas corpus proceeding on July 2, 1998, it is evident that the photograph sent by South Carolina authorities and subsequently given to the Assistant District Attorney did not depict the plaintiff's image. Thereafter, the court granted bail. The plaintiff was released on bail on July 6, 1998, and the extradition proceeding was formally dismissed on July 9, 1998.

## II. *Procedural History*

The plaintiff filed a notice of claim against, among others, the City of New York and the District Attorney's office (hereinafter collectively the defendants) on August 17, 1998. The plaintiff alleged that "as a result of * * * negligence, intentional disregard and malice, [he] was caused to be held in jail without bail for 24 days." The plaintiff further alleged that he had been caused "physical, psychological and emotional injuries arising from false arrest and unlawful imprisonment."

Thereafter, the plaintiff served a summons and verified complaint commencing this action. His first cause of action al-

leged that he was caused to be incarcerated from June 13, 1998, to July 6, 1998, by the malicious, wanton, and negligent failure of the defendants to correctly investigate whether he was the person identified by the fugitive warrant. In addition to a negligent investigation claim, the plaintiff's first cause of action also alleged false arrest and false imprisonment and can be construed to allege a claim to recover damages for malicious prosecution. The second cause of action alleged that the defendants negligently failed to prevent the abuse of process, as described in the first cause of action, by police officers, the District Attorney, and the Assistant District Attorneys who were acting within the scope of their employment.

The third cause of action alleged deprivation of rights secured by the 4th, 5th, and 14th Amendments of the United States Constitution in violation of 42 USC § 1983. The plaintiff complained that the acts of the defendants, as alleged in his first and second causes of action, were done, not as individuals, but pursuant to customs or usages of the State of New York and the City as law enforcement officers. The plaintiff's fourth cause of action alleged that the City and the District Attorney's office negligently trained, supervised, and monitored its personnel and failed to promulgate and put into effect appropriate rules governing the duties of its police officers, District Attorney, Assistant District Attorneys, and other employees. The plaintiff further alleged that the defendants' actions directly resulted in his injuries.

The fifth cause of action alleged that the defendants acted maliciously and in willful disregard of the plaintiff's rights and, as a result, the plaintiff sought $20 million in punitive damages.

By notice of motion dated March 9, 2000, the defendants moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint for failure to state a cause of action. In support thereof, the defendants argued, inter alia, that the plaintiff was lawfully arrested and thereafter was properly held in custody pursuant to CPL 570.34. Moreover, the defendants argued, the plaintiff's complaint set forth nonactionable claims for negligent investigation and prosecution. Relying upon *Heath v State of New York* (229 AD2d 912 [1996]), the defendants asserted that the plaintiff's only recourse was a claim for malicious prosecution, but that such a claim would fail because CPL 570.34 "serves as a complete defense to a claim for false arrest and imprisonment and eliminates an essential element of a claim for malicious prosecution" (*Heath v State of New York, supra* at 912-913).

As to the plaintiff's constitutional claims, the defendants argued that the plaintiff could not recover pursuant to 42 USC § 1983 because there was no constitutional violation and the complaint did not articulate one. The defendants further argued that the complaint failed to articulate a municipal custom or practice that would support a 42 USC § 1983 claim under the doctrine of respondeat superior. The defendants charged that they were absolutely immune from "liability under 42 USC § 1983 for activities intimately associated with the judicial phase of the criminal process," which includes "initiating a prosecution" and "presenting the State's case." Thus, the defendants argued, the acts of the District Attorney's office with regard to the prosecution of the plaintiff pursuant to the fugitive warrant were "judicial" in nature and they were therefore immune from suit. Finally, the defendants argued that the plaintiff's final cause of action for punitive damages was untenable since he had no legally cognizable claim.

The plaintiff opposed the defendants' motion, arguing, inter alia, that the existence of the South Carolina warrant did not provide absolute privilege to police or prosecutors. He also argued that the arresting officers failed to exercise due diligence in determining that he was not the suspect wanted in South Carolina.

By order dated May 19, 2000, the Supreme Court denied the defendants' motion in its entirety without opinion. The defendants now appeal.

### III. *Analysis*

In reviewing a motion to dismiss under CPLR 3211 (a) (7) for failure to state a cause of action, the allegations of the complaint are deemed to be true. The pleading will be deemed to allege whatever may be implied from its statements by reasonable intendment and the court must give the pleader the benefit of all favorable inferences that may be drawn from the complaint, without expressing its opinion as to whether the plaintiff can ultimately establish the truth of the allegations before the trier of fact (*see Campaign for Fiscal Equity v State of New York,* 86 NY2d 307, 318 [1995]). Application of this standard leads us to conclude that only the plaintiff's third and fourth causes of action are cognizable.

A. *The Supreme Court Erred in Failing to Dismiss the Plaintiff's First and Second Causes of Action.*

■ It is well settled that New York courts do not recognize claims for negligent or malicious investigation. "A plaintiff

seeking damages for an injury resulting from a wrongful arrest and detention 'may not recover under broad general principles of negligence * * * but must proceed by way of the traditional remedies of false arrest and imprisonment' " (*Antonious v Muhammad,* 250 AD2d 559, 559-560 [1998], quoting *Boose v City of Rochester,* 71 AD2d 59, 62 [1979]; *see Heath v State of New York, supra*). Thus, the plaintiff's claim alleging negligent investigation should have been dismissed.

■ The plaintiff's claims alleging false arrest and malicious prosecution against the District Attorney and Assistant District Attorneys must also be dismissed. District Attorneys are immune from civil liability for activities "intimately associated with the judicial phase of the criminal process," meaning "initiating a prosecution and in presenting the State's case" (*Imbler v Pachtman,* 424 US 409, 430-431 [1976]; *Covillion v Town of New Windsor,* 123 AD2d 763 [1986]). This immunity is derived from the common-law rule of immunity conferred upon prosecutors (*see Imbler v Pachtman, supra* at 424). However, prosecutors enjoy only qualified immunity when acting in an "investigative * * * capacity" (*Rodrigues v City of New York,* 193 AD2d 79, 85 [1993] [internal quotation marks omitted]).

In *Minicozzi v City of Glen Cove* (97 AD2d 815, 816 [1983]), we held that "allegations that the prosecutor failed to thoroughly investigate the matter and that he unnecessarily delayed the ultimate dismissal of the criminal charges involve activities intimately associated with the judicial phase of the criminal process, e.g., pretrial preparation, which were performed by the prosecutor in his quasi-judicial capacity," and his actions were therefore immune from prosecution. At bar, the plaintiff's complaint alleges that after his arrest the District Attorney and Assistant District Attorneys failed to obtain his fingerprints and other identifying evidence in order to determine whether he was the South Carolina fugitive. However, in light of our holding in *Minicozzi v City of Glen Cove (supra),* it is clear that these activities fall within the compass of the District Attorney and Assistant District Attorneys' "judicial" capacity, and thus the defendants are absolutely immune.

■ With respect to the City and the remaining defendants which are not cloaked in immunity, the Supreme Court should have dismissed the plaintiff's claims alleging false imprisonment and malicious prosecution. To establish a cause of action to recover damages for false imprisonment the plaintiff must show that (1) the defendant intended to confine him or her, (2) the plaintiff was conscious of the confinement, (3) the plaintiff

did not consent to the confinement, and (4) the confinement was not otherwise privileged (*see Broughton v State of New York,* 37 NY2d 451, 456-457 [1975], *cert denied sub nom. Schanbarger v Kellogg,* 423 US 929 [1975]).

Here, the first three elements of the false arrest and imprisonment claim are not in dispute, that is, the defendants intended to confine the plaintiff, the plaintiff was aware of the confinement, and the plaintiff did not consent to his confinement. Thus, liability for the remaining defendants turns on whether the plaintiff's confinement was otherwise privileged. As a matter of law, where, as here, the plaintiff's arrest was justified pursuant to CPL 570.34, it is privileged (*see Heath v State of New York, supra*). "An arrest made pursuant to a warrant valid on its face and issued by a court having jurisdiction of the crime and person is privileged" (*Boose v City of Rochester, supra* at 66, citing *Broughton v State of New York, supra*). A finding of justification pursuant to CPL 570.34 "serves as a complete defense to a claim for false arrest and imprisonment and eliminates an essential element of a claim for malicious prosecution" (*Heath v State of New York, supra* at 912-913).

CPL 570.34 states that "[t]he arrest of a person in this state may be lawfully made also by any police officer * * * upon reasonable information that the accused stands charged in the courts of another state with a crime punishable by death or imprisonment for a term exceeding one year." Applying this statutory language to the instant case, the information in the South Carolina warrant provided reasonable information justifying the plaintiff's arrest. Thus, the police and District Attorney's office had what appeared to be a valid directive for the arrest and incarceration of the plaintiff and the warrant provided probable cause for his arrest (*see Heath v State of New York, supra*).

▮ The plaintiff nevertheless contends that his claim alleging malicious prosecution is viable against the defendants' motion to dismiss on the premise that even if the warrant itself was valid, he was not the actual person wanted and therefore probable cause was lacking. The elements of the tort of malicious prosecution are (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, and (4) actual malice (*see Broughton v State of New York, supra* at 457; *see also Boose v City of Rochester, supra* at 65). Generally, where there is an alleged unlawful arrest made pursuant

to a valid warrant, the appropriate form of action is one for malicious prosecution, not false imprisonment (*see Williams v City of Buffalo,* 72 AD2d 952 [1979]). The plaintiff's claim that probable cause was lacking because he differed in height from the fugitive by seven inches does not undermine probable cause for the purposes of this analysis. " 'In any investigation the police are likely to encounter discrepancies * * * These matters may impair their ability to prove guilt beyond a reasonable doubt at trial, but they generally have little bearing at preliminary stages where the only relevant concern is whether there is sufficient evidence to show probable cause to believe the defendant committed the crime' " (*Orminski v Village of Lake Placid,* 268 AD2d 780, 782 [2000], quoting *Gisondi v Town of Harrison,* 72 NY2d 280, 285 [1988]; *see DeFilippo v County of Nassau,* 208 AD2d 793 [1994]).

The plaintiff further relies upon *Williams v City of Buffalo* (*supra*), *Craner v Corbett* (27 AD2d 796 [1967]), and *Maracle v State of New York* (50 Misc 2d 348 [1966]), and contends that defendants are not insulated from liability where they fail to act with reasonable diligence. However, the plaintiff's argument is flawed as these cases present so-called "misnomer" situations where warrants could be applied with accuracy as to two or more persons; such situations require police to investigate further in order to obtain probable cause to make an arrest. This is not a misnomer case because the plaintiff was the sole person to whom the information on the warrant applied. Thus, while South Carolina authorities may have been misled and erred in failing to accurately determine the true identity of the person they named in the fugitive warrant, the defendants did not err in determining that the plaintiff was the person actually named (*see Boose v City of Rochester, supra* at 67). Thus, probable cause existed based on the warrant itself without the need for the police to first make further inquiries.

*Dennis v State of New York* (96 AD2d 1143 [1983]), upon which the plaintiff relies, is similarly distinguishable from the instant case. There, a "Charles Dennis" was indicted by a grand jury, and a warrant was issued for his arrest. An information sheet attached to the warrant contained a detailed and accurate description of Charles F. Dennis, and his date of birth, social security number, and address. However, the Charles F. Dennis described in the warrant was not the Charles Dennis who was charged with the crime and whose arrest was authorized by the warrant. Relying on the warrant, the State Police arrested Charles F. Dennis. Over the course of his two-day

incarceration, Dennis repeatedly told the officers that they had the wrong person but they made no investigation whatsoever. It was only at Dennis's arraignment that an investigation confirmed that the police had arrested the wrong man. The denial of the State's motion to dismiss Dennis's complaint seeking damages for false arrest was affirmed by the Appellate Division, Fourth Department. The Appellate Division found that because there were two or more persons with·the same name as that on the warrant, the police were obligated to use due diligence to ascertain which they reasonably believed was the person to whom the warrant applied. However, *Dennis* was a misnomer case, unlike the case at bar. Moreover, in the instant case, it is undisputed that prior to the plaintiff's arraignment, the defendants reacted to the plaintiff's claim of innocence by contacting South Carolina and obtaining the fugitive warrant which matched information given to the arresting officers by the plaintiff himself. And, there is no evidence that the fugitive and the plaintiff both shared the plaintiff's name, rather, the plaintiff alleges that the fugitive stole his identity.

The plaintiff's reliance on *Hernandez v State of New York* (228 AD2d 902 [1996]) is similarly misplaced. *Hernandez* articulated the exception to the rule that probable cause is an absolute defense to a false imprisonment or malicious prosecution cause of action, stating that "where it can be shown that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures, the presumption of probable cause may be overcome" (*see Hernandez v State of New York, supra* at 904). However, in *Hernandez*, neither the indictment nor the arrest warrant contained an address or any information other than a name identifying the plaintiff. The *Hernandez* court found that the failure to substantiate in any way the residence, age, or occupation of the plaintiff was sufficient to overcome the presumption of probable cause (*see Hernandez v State of New York, supra* at 905). No similarly egregious circumstances exist in the instant case, where the defendants detained the plaintiff pursuant to what appeared to be a valid fugitive warrant exactly matching the plaintiff's name, date of birth, and address. Thus, the Supreme Court erred in failing to dismiss the plaintiff's first cause of action as to all of the defendants.

■ The plaintiff's second cause of action alleging abuse of process is similarly unsustainable. In order to prevail on such a claim, the plaintiff must establish that the defendants (1)

used regularly-issued process, either civil or criminal, (2) intended to do harm without excuse or justification, and (3) used the process in a perverted manner to obtain a collateral objective (*see Lieberman v Pobiner, London, Bashian & Buonamici,* 190 AD2d 716, 717 [1993]). It is not necessary to address the issue of whether the defendants' actions were justified or whether process was perverted to obtain a collateral objective; it is enough to note that the plaintiff's abuse of process claim is premised on negligence. It is self-evident that a claim of negligence cannot support this intentional tort. Thus, the Supreme Court improperly denied that branch of the defendants' motion which was to dismiss the second cause of action.

B. *The Supreme Court Properly Denied that Branch of the Defendants' Motion which was to Dismiss the Plaintiff's Third and Fourth Causes of Action.*

■ Turning to the plaintiff's 42 USC § 1983 claims, that section provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." The defendants cite *Incorporated Vil. of Ocean Beach v Maker Water Taxi* (201 AD2d 704 [1994]) for the proposition that section 1983 "by itself creates no independent, substantive constitutional right but rather serves merely as a vehicle for enforcing such rights" (*id.* at 704). Seizing upon this language, the defendants argue that in the case at bar the plaintiff failed to specify the substantive constitutional rights upon which his claim is based and thus his claim should have been dismissed. However, even a cursory comparison of the pleadings at bar and those in *Incorporated Vil. of Ocean Beach v Maker Water Taxi (supra)* reveals that the defendants' argument is without merit.

In this case, the plaintiff has specifically alleged that the defendants' actions deprived him of his rights secured by the 4th, 5th, and 14th Amendments to the United States Constitution. Giving the plaintiff's allegations the benefit of every favorable inference and deeming the complaint to allege whatever may be implied from its statements by reasonable intendment, the plaintiff's third and fourth causes of action, taken as a whole, allege that the District Attorney's office and the City acted with deliberate indifference to his constitutional rights in failing to adequately train, supervise, and discipline

their prosecutors, police officers, and personnel in matters involving the identification, processing, and extradition of persons arrested pursuant to fugitive warrants, and that this was the proximate cause of the plaintiff's injuries. Thus, the defendants' assertion that the plaintiff's claim should be dismissed for failure to allege a substantive constitutional violation with specificity is without merit, and this Court finds that the plaintiff has succeeded in meeting the requirements for pleading a cause of action under 42 USC § 1983.

This of course does not end the analysis for, as our finding above indicates, the District Attorney and personnel of the District Attorney's office are immune from liability. Nevertheless, the actions of the District Attorney's office may subject the City to liability under 42 USC § 1983. However, before reaching that issue, a threshold question must be addressed, that is, whether there is a sufficient factual basis in the record to indicate that the plaintiff has suffered a constitutionally cognizable injury. Obviously, the City cannot be held liable for the actions of its municipal employees if the plaintiff has suffered no constitutional injury.

In *Baker v McCollan* (443 US 137 [1979]), the United States Supreme Court held that there is ordinarily no constitutional violation where a person is arrested with probable cause and pursuant to a valid arrest warrant but by mistake. In *Baker,* the plaintiff was mistakenly arrested pursuant to a facially-valid warrant and brought a claim pursuant to 42 USC § 1983 against the Sheriff based solely on the Sheriff's failure to investigate and determine that the wrong man had been arrested. The Supreme Court held that the plaintiff "was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment" (*Baker v McCollan, supra* at 144). While the Supreme Court found that a detention lasting three days over a New Year's weekend did not, in the circumstances presented, amount to a constitutional violation, it left the door open to such a possibility by stating that "one in [the plaintiff's] position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment" (*Baker v McCollan, supra* at 144). The Supreme Court went on to state that an initially valid detention "will after the lapse of a certain amount of time deprive the accused of 'liberty * * * without due process of law'" (*Baker v McCollan, supra* at 145, quoting US Const Amend XIV).

Although the Supreme Court did not provide a low-water mark indicating at what point an initially valid detention would spawn a constitutional violation, other federal courts have held that the failure of law enforcement officers to take readily available steps to verify the identity of an arrestee resulting in prolonged detention may be actionable under 42 USC § 1983 (*see Williams v County of Sullivan,* 157 FRD 6 [1994]; *see also Cannon v Macon County,* 1 F3d 1558 [1993]; *Buenrostro v Collazo,* 777 F Supp 128 [1991], *affd* 973 F2d 39 [1992]; *Johnson v City of Chicago,* 711 F Supp 1465 [1989]).

In *Cannon v Macon County (supra)*, Macon County police arrested Mary Rene Parrot on the mistaken assumption that she was "Mary E. Mann a.k.a. Mary E. Parrot" who was wanted for theft by deception in Kentucky. Parrot was held for a period of seven days. The United States District Court for the Middle District of Alabama's judgment notwithstanding the verdict in favor of the defendant Sheriff was reversed on appeal. The United States Court of Appeals for the Eleventh Circuit stated that detention on the basis of mistaken identification may present a viable 42 USC § 1983 claim. The court subsequently found that Parrot presented sufficient evidence from which a jury could conclude that the Sheriff acted with deliberate indifference when he completed the arrest procedures without making any attempt to confirm her identity as the fugitive wanted by another state (*see Cannon v Macon County, supra* at 1563-1565).

In both *Buenrostro v Collazo (supra)* and *Johnson v City of Chicago (supra)*, the courts found that circumstances existed in which an otherwise valid arrest and detention amounted to a constitutional violation. In *Buenrostro,* the plaintiff was incarcerated for 31 days, during which he repeatedly asserted his innocence and repeatedly refused to waive an extradition hearing. The plaintiff also alleged that the only information relied upon for the arrest was name, birth date, and eye color. Similarly, in *Johnson,* during the plaintiff's six-day incarceration the authorities failed to take even minimal steps to obtain either a photograph or fingerprints in order to confirm his identity.

The inquiry into when an otherwise valid arrest and detention becomes a constitutional violation is not susceptible to resolution by simple observation of the number of days a person is detained. In each case courts have considered not only the period of detention, but other attendant circumstances such as physical similarities between the arrestee and the actual fugi-

tive, the date of incarceration (for example, over a holiday weekend when it would presumably be more difficult to contact other agencies), and discrepancies or omissions contained in the warrant itself.

■ Taking into account these and other factual considerations, the question of whether the instant plaintiff's approximately 24-day incarceration rose to the level of a constitutional deprivation is a factual issue which should not be decided on a motion to dismiss. This is particularly evident considering that (1) the plaintiff repeatedly informed the police officers and Assistant District Attorneys that he had never been to South Carolina and was not the person sought by South Carolina authorities, (2) the plaintiff alleged and testified that he is some seven inches taller than the fugitive actually wanted in South Carolina, (3) an examination of the record indicates that eye and hair color were not indicated on the fugitive warrant and there is an apparent discrepancy between the plaintiff's social security number and the number listed on the warrant, and (4) the testimony of Mr. Calia established that when a photograph and fingerprints of the fugitive were ultimately requested, a photograph was sent within 24 hours.

The defendants also cannot be heard to argue that there was no constitutional violation simply because CPL 570.34 authorized the initial arrest and detention. While there is necessarily some overlap in the analysis of different legal theories in this case, and while CPL 570.34 may negate certain essential elements of state law claims alleging false arrest and malicious prosecution, a New York statute cannot be invoked to justify or cure an alleged deprivation of rights guaranteed under the United States Constitution. Furthermore, the defendants' citation to CPL 570.46 as a basis for their contention that they were "explicitly prohibited from inquiring into the guilt or innocence of the person held on the out-of-state warrant," is highly disingenuous when, in the very same sentence, the statute provides an exception to the prohibited inquiry for the sole purpose of "identifying the person held as the person charged with the crime." Thus, the issue of whether the plaintiff's prolonged detention rose to the level of a constitutional deprivation is a question of fact not properly disposed of on a motion to dismiss.

Having resolved that issue, we return to a final dispositive question: can the actions of the District Attorney's office, which is immune from liability under 42 USC § 1983, nonetheless subject the City to liability pursuant thereto for failure to train

and supervise its municipal employees? The defendants correctly assert that a municipality may not be held liable for the unconstitutional acts of its municipal employees on the basis of respondent superior (*see City of Canton, Ohio v Harris,* 489 US 378 [1989]). Instead, a municipality can be found liable under 42 USC § 1983 for deprivation of constitutional rights only where the municipality *itself* causes the constitutional violation at issue. In other words, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983" (*Monell v Department of Social Servs. of City of N.Y.,* 436 US 658, 694 [1978]; *see Jackson v Police Dept. of City of N.Y.,* 192 AD2d 641 [1993], *cert denied* 511 US 1004 [1994]; *Walker v City of New York,* 974 F2d 293 [1992], *cert denied* 507 US 961, 972 [1993]).

In *Walker v City of New York (supra),* the Second Circuit traced the development of the "failure to train theory" under 42 USC § 1983. The Second Circuit explained that after *Monell v Department of Social Servs. of City of N.Y. (supra),* the Supreme Court in *City of Oklahoma City v Tuttle* (471 US 808 [1985]), *Pembaur v Cincinnati* (475 US 469 [1986]), and *St. Louis v Praprotnik* (485 US 112 [1988]) sought to address some of the issues left unresolved in *Monell,* such as what is a government policy or custom, and who is a policymaker for purposes of 42 USC § 1983. The Second Circuit explained that the "combination of [*Tuttle, Pembaur,* and *Praprotnik*] necessarily molds many § 1983 claims against municipalities into 'failure to train' or 'failure to supervise' claims. It is only by casting claims in this way that plaintiffs can link an actual decision by a high level municipal official to the challenged incident" (*Walker v City of New York, supra* at 297).

Following *Tuttle, Pembaur,* and *Praprotnik,* the Supreme Court attempted to address the exact dimensions of municipal liability for failure to train or supervise in *City of Canton, Ohio v Harris (supra).* The *Harris* court ruled that a claim of inadequate training or supervision will trigger municipal liability only when "the failure to train amounts to deliberate indifference to the rights of persons" with whom municipal employees come into contact (*City of Canton, Ohio v Harris, supra* at 388). The Supreme Court went on to explain that "deliberate indifference" required city policymakers to make " 'a deliberate choice * * * from among various alternatives' " not to train its employees (*City of Canton, Ohio v Harris, supra* at 389, quot-

ing *Pembaur v Cincinnati, supra* at 483-484). The Supreme Court explained this paradox by stating that "[i]t may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees," but failure to train can be considered tantamount to municipal policy, for which the city is responsible, where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" (*City of Canton, Ohio v Harris, supra* at 390).

Based on examples provided by the *Harris* court to illustrate deliberate indifference, the Second Circuit discerned that three requirements must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. First, plaintiffs must show that the policymaker knows "to a moral certainty" that employees will encounter a given situation (*Walker v City of New York, supra* at 297). Thus, policymakers will not exhibit deliberate indifference where they fail to train for highly unusual or unforeseen events. Second, plaintiffs must show that the situation either presents the employee with a difficult choice, the kind which training will make less difficult, or that there is a history of employees mishandling the situation. Finally, plaintiffs must show that the wrong choice by the municipal employee will frequently result in the deprivation of a citizen's constitutional rights (*Walker v City of New York, supra* at 297-298).

Reading the plaintiff's claims herein in a light most favorable to him, we conclude that he has adequately alleged and made a threshold showing that the constitutional harm here was caused by a failure by the District Attorney's office to train assistant district attorneys and other personnel with regard to proper procedures for determining whether persons detained by them pursuant to fugitive warrants are in fact the persons sought by out-of-state authorities. Moreover, the failure of the District Attorney's office to train for this situation could constitute deliberate indifference sufficient to give rise to municipal liability.

First, it is clear that the District Attorney's office knows to a moral certainty that its Assistant District Attorneys and personnel in charge of fugitive extradition will encounter situations like the one at bar. Second, a jury could find that there is

a history of employees mishandling the situation at bar. This conclusion is buttressed by the examination before trial of District Attorney's office employee Andrew Calia. Mr. Calia indicated in his examination before trial that (1) the District Attorney's office did not have policies or procedures in effect concerning the timing of a request for information confirming a detainee's status as a fugitive, and (2) extradition files, which include verification of the detainee as the wanted fugitive, were not opened in every extradition case. Finally, a failure by the District Attorney's office to determine that the person being held is in fact the subject of a fugitive warrant is a situation that is likely to result in the deprivation of a detained citizen's constitutional rights.

Having determined that the plaintiff properly alleged deliberate indifference by the District Attorney and the District Attorney's office, the question remains whether or not the District Attorney acted as a policymaker for the City so as to bring the City within the ambit of a 42 USC § 1983 claim. In *Baez v Hennessy* (853 F2d 73, 77 [1988], *cert denied sub nom. Baez v County of Onondaga,* 488 US 1014 [1989]) the United States Court of Appeals for the Second Circuit held that "[w]hen prosecuting a criminal matter, a [D]istrict [A]ttorney in New York State, acting in a quasi-judicial capacity, represents the State not the county." Accordingly, the court ruled that a district attorney's misconduct in prosecuting an individual could not give rise to municipal liability (*Baez v Hennessy, supra* at 77). However, in this case, the plaintiff's third and fourth causes of action challenge the District Attorney's management of the office, not the decision to prosecute. In *Walker v City of New York (supra* at 301), the United States Court of Appeals for the Second Circuit stated that "[w]here a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker."

The conclusion that liability for the District Attorney's actions in his role as a manager of the District Attorney's office rests with the county (or for New York City's constituent counties the City), rather than the State, is supported by New York law. Following United States Court of Appeals for the Second Circuit precedents, the Appellate Division, First Department, found in *Ramos v City of New York* (285 AD2d 284, 303 [2001]) that when a district attorney fails to train and supervise employees regarding legal obligations, "such management failures correlate with defects in the district attorney's role as a local policymaker," and thus liability lies with the City (*citing*

*Walker v City of New York, supra*). The Court bolstered this conclusion by stating that "[a]fter all, a District Attorney historically has been categorized as a local, rather than a State, officer (*see*, Public Officers Law § 2), which is unremarkable in that the District Attorney is elected and compensated by the county's voters and enjoys no extra-county jurisdiction * * * as a result of which a District Attorney's torts are the torts of the county rather than of the State" (*Ramos v City of New York, supra* at 303). Finally, the *Ramos* Court noted that Administrative Code of the City of New York § 3-601 (b) identifies the District Attorney as a city official.

Based upon the foregoing analysis, we find that a 42 USC § 1983 claim may be maintained against the City for the conduct of the District Attorney's office, insofar as the District Attorney acted as a New York City policymaker. It should be noted that our holding reaches no farther than to the facts presented on this appeal, and thus, without expressing an opinion as to whether the plaintiff will be able to produce evidence at trial or on a motion for summary judgment to substantiate the allegations in his third and fourth causes of action, we hold that for the purposes of this motion, the 42 USC § 1983 claim against the City cannot be dismissed at this stage of the litigation.

### C. *The Supreme Court Erred in Failing to Dismiss the Plaintiff's Claim for Exemplary and Punitive Damages*

■ The plaintiff also requests exemplary and punitive damages in the amount of $20 million. Since the City is the single remaining defendant, the plaintiff's demand must be construed as one seeking punitive damages from the City. However, case law from the Court of Appeals makes plain that the City of New York, as a political subdivision of the State of New York, must be presumed immune from punitive damages, absent a clear statement of a contrary legislative intent (*see e.g. Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 NY2d 382 [1987]; *Sharapata v Town of Islip,* 56 NY2d 332 [1982]). Accordingly, we find that the Supreme Court erred in denying that branch of the defendants' motion which was to dismiss the plaintiff's claim for exemplary and punitive damages.

### IV. *Conclusion*

The plaintiff's third and fourth causes of action, seeking damages for constitutional deprivations flowing from his extended incarceration, are cognizable. Thus, the Supreme Court correctly sustained only these two causes of action. The remaining causes of action must be dismissed.

Accordingly, the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendants' motion which were to dismiss the complaint insofar as asserted against the Kings County District Attorney's office and District Attorney Charles Hynes, and to dismiss the first, second, and fifth causes of action insofar as asserted against the City of New York, and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed, without costs or disbursements.

KRAUSMAN, FRIEDMANN and SCHMIDT, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the defendants' motion which were to dismiss the complaint insofar as asserted against the Kings County District Attorney's office and District Attorney Charles Hynes, and to dismiss the first, second, and fifth causes of action insofar as asserted against the City of New York, and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed, without costs or disbursements.