■ Michael Bumbury, Respondent, v City of New York, Appellant. [880 NYS2d 44]—

Order, Supreme Court, Bronx County (Janice L. Bowman, J.), entered April 17, 2007, which denied defendant's motion to dismiss the complaint and granted plaintiff's cross motion to amend the complaint, modified, on the law, to dismiss that part of the complaint alleging a claim for malicious prosecution, and otherwise affirmed, without costs.

A cause of action for malicious prosecution accrues when the criminal proceeding terminates favorably to the plaintiff (*Boose v City of Rochester*, 71 AD2d 59, 65 [1979]). Thus, to the extent that plaintiff alleges malicious prosecution by the Bronx County District Attorney, that claim accrued on March 4, 2002, when the sodomy indictment was dismissed, and with regard to any claim of malicious prosecution, plaintiff's notice of claim served March 19, 2004 and this action commenced March 3, 2005 are untimely. In any event, we note that plaintiff cross-moved to amend his complaint to remove any claims of malicious prosecution.

On the other hand, a cause of action for unlawful imprisonment accrues "when the confinement terminates" (*Boose v City of Rochester*, 71 AD2d at 65). Plaintiff's cause of action alleging unlawful imprisonment thus accrued upon plaintiff's physical

release from custody (*Nunez v City of New York*, 307 AD2d 218, 219 [2003]; *Allee v City of New York*, 42 AD2d 899 [1973]), which took place on February 26, 2006, not December 18, 2001, when he was apparently transferred to federal custody to be deported. The City's argument that the federal custody has no bearing on its motion to dismiss lacks merit. The federal detention was rooted in plaintiff's wrongful sodomy conviction, after the City provided federal authorities with the record of plaintiff's conviction, but later failed to remove it from his criminal history, even though the conviction was vacated and the indictment ultimately dismissed.

Given the absence of prejudice to defendant, the court did not improvidently exercise its discretion by, in effect, granting plaintiff leave to amend the complaint to clarify his claims (*see Zornberg v North Shore Univ. Hosp.*, 29 AD3d 986 [2006]; *Greenburgh Eleven Union Free School Dist. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 298 AD2d 180 [2002]).

Upon review of the *Monell* claim (*Monell v New York City Dept. of Social Servs.*, 436 US 658 [1978]) raised in the original complaint, we find that plaintiff has given the City fair notice of a custom or policy that would establish municipal liability under 42 USC § 1983 by alleging gross negligence in failing properly to train, supervise and discipline its employees, resulting in injury. Such failure, it is alleged, amounted to "deliberate indifference" to the rights of individuals coming in contact with those employees (*Canton v Harris*, 489 US 378, 388 [1989]; *see also Pendleton v City of New York*, 44 AD3d 733 [2007]; *Johnson v Kings County Dist. Attorney's Off.*, 308 AD2d 278, 289-290 [2003]; *and see generally Ramos v City of New York*, 285 AD2d 284, 303-306 [2001]). Concur—Mazzarelli, J.P., Andrias and Freedman, JJ.

Nardelli and Buckley, JJ., dissent in part in a memorandum by Buckley, J., as follows: I dissent only with respect to the cause of action for false imprisonment, which I would dismiss for failure to serve a timely notice of claim.

While plaintiff was incarcerated at Rikers Island in 1998 pending a parole violation hearing, an inmate, Joseph Davis, accused him of sexual assault. Following dismissal of the parole violation charge, plaintiff was released on bail, but was returned to custody on December 14, 1999, and shortly thereafter was convicted of sodomy in the first degree and sentenced to a prison term of 12 years.

During the course of a civil action by Davis against the City and individual correction officers, the City produced previously undisclosed unusual incident reports generated by the New

York City Department of Correction (DOC) memorializing statements of an inmate who claimed that Davis had divulged to him intentions to falsely accuse fellow inmates of sexual assault in order to obtain a transfer to a different cell. Plaintiff subsequently obtained copies of those reports, and in 2001 he moved to vacate the judgment of conviction based on the People's failure to disclose the exculpatory *Brady*[1] material consisting of the DOC unusual incident reports. On November 5, 2001, Bronx Supreme Court vacated the conviction and ordered plaintiff to be released. The DOC released plaintiff on December 18, 2001 into the custody of the United States Immigration and Naturalization Service (INS), which had issued a detainer for his deportation, allegedly based on the mistaken belief that the judgment of conviction was still extant. On March 5, 2002, the indictment against plaintiff was dismissed on the People's recommendation, because the previously undisclosed evidence "contradicts Davis' testimony and supplies him with a possible motive to lie, [and] the People would be unable to prove this case beyond a reasonable doubt." However, the INS, later reorganized within the Department of Homeland Security (*see* 6 USC § 291; *Blake v Carbone*, 489 F3d 88, 92 [2d Cir 2007]), did not release him until early 2006, purportedly based on the continuing erroneous impression that the conviction, or at least the charges, were still valid.[2]

While still in federal immigration custody, plaintiff, by his attorney, served the City with a notice of claim on March 19, 2004, and filed a summons and complaint on March 3, 2005. Plaintiff asserted claims for false imprisonment, negligence, and violation of civil rights, grounded on the theory that the recklessness or negligence of correction officers in failing to turn over exculpatory evidence to the District Attorney's Office, and the failure of the City to properly train and supervise correction officers, caused him to be unjustifiably imprisoned; he alleged that his confinement and damages were continuing because he was still in federal immigration detention.[3]

The City moved to dismiss the state law claims as time-barred

---

1. *Brady v Maryland* (373 US 83 [1963]).

2. Although plaintiff asserts that he was completely vindicated in the federal proceedings, the document in the record that he relies on for that proposition states that he was released on $20,000 bond, thus indicating that the removal proceedings remained unresolved. Nevertheless, for purposes of this appeal, plaintiff's rendition should be accepted as accurate (*see Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 92 [1993]).

3. Plaintiff later withdrew his implicit claim of malicious prosecution against the District Attorney's Office. A separate action against the State for unjust conviction and imprisonment was dismissed for failure to state a

and the civil rights claims as inadequately pleaded. Plaintiff cross-moved to amend the complaint to clarify his claims by separating them into distinct causes of action.

Whether denominated a cause of action for false imprisonment or false arrest, the distinction being mainly semantic (*see Brown v Roland*, 215 AD2d 1000 [1995], *lv dismissed* 87 NY2d 861 [1995]), the tort accrues when the confinement terminates (*see Nunez v City of New York*, 307 AD2d 218, 219 [2003]). A plaintiff must serve a notice of claim within 90 days after the claim arose (*see id.*; General Municipal Law § 50-e [1] [a]), although the court may grant leave to file a late notice of claim within one year and 90 days of accrual (*see Nunez*, 307 AD2d at 219; General Municipal Law § 50-e [5]; § 50-i [1]); the action must also be commenced within one year and 90 days (*see* General Municipal Law § 50-i [1]).

Plaintiff was released from municipal detention[4] on December 18, 2001, but did not serve a notice of claim until March 19, 2004 or a summons and complaint until March 3, 2005, both well outside the limitations periods. In order to render his claims timely, plaintiff argues that his municipal imprisonment and his federal detention should be deemed one continuous period of confinement, and thus that his claim accrued in February 2006, when he was released by the federal authorities. According to plaintiff, his confinement by federal immigration authorities should be attributed to the City because the City failed to remove his conviction from his criminal history.

Although ordinarily on a motion to dismiss the plaintiff's allegations are deemed to be true, we need not accept legal conclusions or factual allegations that are inherently incredible or flatly contradicted by documentary evidence or well-established law (*see Ullmann v Norma Kamali, Inc.*, 207 AD2d 691, 692 [1994]). The agency charged with maintaining criminal records is the New York State Division of Criminal Justice Services

cause of action under Court of Claims Act § 8-b, since the vacatur of his conviction was predicated on a deprivation of due process rights and not any of the grounds enumerated in the statute or on a likelihood of innocence (*see Bumbury v State of New York*, Ct Cl, Mar. 30, 2006, Scuccimarra, J., claim No. 107877, motion No. M-70858, UID No. 2006-030-523, *rearg denied* Nov. 13, 2006, motion No. M-71758, UID No. 2006-030-581).

4. In support of his argument that there should be no distinction between his city imprisonment and his federal detention, plaintiff makes much of the fact that following his conviction he was transferred from the city jail to a state correctional facility. However, that transfer was required by law (*see* Penal Law § 70.20 [1] [a]). Unlike the federal immigration authorities, the State Department of Correctional Services exercised no independent decision to take plaintiff into custody, and indeed was mandated to do so.

(DCJS) (*see People v White*, 56 NY2d 110, 112 n 1 [1982]; *Matter of Rodriguez v Johnson*, 4 AD3d 216 [2004]; *Matter of Ortiz v Supreme Ct. of New York County*, 199 AD2d 160 [1993]; Executive Law § 837 [6]). Furthermore, "[u]pon the termination of a criminal action or proceeding against a person in favor of such person . . . the clerk of the court wherein such criminal action or proceeding was terminated shall immediately notify the commissioner of the division of criminal justice services and the heads of all appropriate police departments and other law enforcement agencies that the action has been terminated in favor of the accused" (CPL 160.50 [1]; *see also Matter of Hynes v Karassik*, 47 NY2d 659 [1979]). Thus, the clerk of the court, a state employee (*see* Judiciary Law § 39 [6]; *Weissman v Evans*, 56 NY2d 458, 462 [1982]), and the DCJS, a state agency, are the only ones with a duty to report and record a vacatur of conviction, and the City could not be faulted for any ministerial error in failing to correct plaintiff's criminal record. Therefore, plaintiff's federal detention cannot be deemed a continuation of his municipal confinement, a fact plaintiff himself implicitly acknowledged by commencing his action against the City while still in federal detention. Accordingly, I would dismiss the state law claim for failure to abide by the limitations periods of the General Municipal Law.

The parties agree that plaintiff's allegations of violations of civil rights amount to a claim under 42 USC § 1983, although they differ on whether the cause of action was adequately pleaded. In contrast to a claim under state tort law, one under section 1983 does not require service of a notice of claim (*see Rapoli v Village of Red Hook*, 41 AD3d 456, 457 [2007]).

While a municipality cannot be held liable under section 1983 on the basis of respondeat superior, it can be held responsible for a deprivation of constitutional rights caused by its own official policy or custom (*see Monell v New York City Dept. of Social Servs.*, 436 US 658, 690-694 [1978]; *Ramos v City of New York*, 285 AD2d 284, 302 [2001]). A municipality's failure to train or supervise its employees can be considered tantamount to an official policy or custom where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" (*Canton v Harris*, 489 US 378, 390 [1989]; *see Johnson v Kings County Dist. Attorney's Off.*, 308 AD2d 278, 294 [2003]). To support a failure to train or supervise claim, a plaintiff must demonstrate that: (1) the

policymakers know to a moral certainty that their employees will encounter a given situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision would make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the employee will frequently result in the deprivation of a person's constitutional rights (*see Johnson*, 308 AD2d at 293-294; *Walker v City of New York*, 974 F2d 293 [2d Cir 1992], *cert denied* 507 US 961, 972 [1993]).

Plaintiff's section 1983 claim against the City is premised on a failure to adequately train, supervise, and/or implement proper policies for correction officers with respect to collecting and turning over exculpatory information. The City does not seriously contest that it knows to a moral certainty that its correction officers will encounter situations where an inmate witness contradicts another inmate's complaint of suffering an attack while in detention and the witness's statements are recorded in reports (*see Johnson*, 308 AD2d at 294). Nor does the City deny that a failure to disclose *Brady* material will frequently result in the deprivation of a person's constitutional rights (*see Ramos*, 285 AD2d at 304-306). Giving plaintiff the benefit of every reasonable inference (*see Kralic v Helmsley*, 294 AD2d 234, 235 [2002]), he alleges a history of mishandling the situation, in that he asserts that the Department of Correction had in place procedures to disclose exculpatory reports to protect itself in civil litigation, but not for the benefit of the accused in criminal proceedings (*see Johnson*, 308 AD2d at 294-295). Therefore, I agree with the majority that plaintiff has sufficiently pleaded a *Monell* claim to survive a motion to dismiss.

Finally, I agree that Supreme Court did not improvidently exercise its discretion in granting leave to amend the complaint, since plaintiff sought only to separate the claims into distinct causes of action, not to raise any new claims, and therefore the City suffered no prejudice (*see Zornberg v North Shore Univ. Hosp.*, 29 AD3d 986 [2006]).